## HIRSCHFELDER vs. THE STATE.

1. The Act of February 7, 1850, (Pamphlet Acts, 51,) renders it unnecessary in a prosecution for trading with a slave *to aver in the indictment*, or to prove who was the master, owner or overseer of such slave, or to negative his assent to such trading.

2. The Act of February 7, 1850, which dispenses with the necessity of certain averments in an indictment for trading with a slave, is not unconstitutional.

3. Permission from the owner, or master, to se'l goods to his slave, not expressing the articles to be sold, is not such a consent as the statute requires, and furnishes no protection to the defendant.

ERROR to the Circuit Court of Conecuh. Tried before the Hon. E. Pickens.

WATTS, JUDGE & JACKSON, for plaintiff in error:

1. No person can be prosecuted in this State for any offence, except by indictment.—See Bill of Rights, sec. 12; Constitution of Ala., sec. 10, (Clay's Dig.,) and The State v. Middleton, 5 Por. 484.

2. An indictment is a brief statement of the "nature and cause of the accusation;" or, in other words, an indictment is a brief logical statement of the facts and circumstances constituting the offence charged.—The State v. Middleton, 5 Por. 484; Arch. Crim. Pl. 25-38.

3. Every indictment must show on its face the facts, in the doing or not doing of which the offence consists, and must charge the facts fully, directly and expressly; or in other words, every indictment must show on its face that some offence known to the

law has been committed.—Turnipseed v. The State, 6 Ala. 664; Brown v. The State, 4 Por. 410 ; Williams v. The State, 15 Ala. 259; Hirschfelder v. The State, 18 Ala. 112 ; Arch. Crim. Pl. 36 to 46 and 48.

4. This indictment charges no offence against the law. Mere trading with a slave is no offence. It is lawful to trade with slaves with the consent of the owner, master or overseer, expressing the articles to be sold or bought. The offence is the trading with the slave without the consent of the owner, master or overseer. The absence of consent is therefore the very essence of the offence, and this absence of consent must be charged in the indictment. Exceptions contained in or incorporated with the enacting clause of the statute, must be negatived.—Arch. Crim. Pl. 48 ; The State v. Saunders, 9 Por. 326; The State v. May, 9 Ala. 167. See particularly what Judge Ormond says in this last case, as to the offence under this statute for peddling without license. The name of the owner, master or overseer must be alleged.

5. But it is contended by the State, that the statute of 1850 (Pamphlet Acts, 51,) dispenses with the necessity of charging the want of consent of the master, owner or overseer, and also the name of the owner, &c. (a) In reference to this, we say, first, that this statute says, on the trial of any person indicted for trading with slaves, as now provided by law, it shall not, &c. A trial is the examination or investigation of an issue, either in fact or law. The finding or framing of an indictment by a grand jury is an *ex parte* proceeding, and cannot in any sense of the term be said to be a trial.—Bouv. L. Dic. 580 ; Black. Com., (3 book, ch. 22, mar. p. 330;) and, secondly, the statute says, that on the trial of any person indicted for trading with slaves, as now provided by law. If indicted as provided by law, before the passage of the statute of 1850, it must have been alleged that the trading was without the consent of the owner, master, or overseer; and the name of the master, owner or overseer must have been alleged ; and thirdly, we insist that the statute never intended to change the form or constituents of the indictment. The only word in the statute which would remotely indicate such an intention is the word *aver.* If the word aver is used to express the idea that no charge or allegation in the indictment, of a want of consent of the owner, &c., or the name of

the owner, &c., is necessary, then the statute is inconsistent with itself, and look at it as you will, it presents the most ridiculous and glaring contradictions and absurdities. But the word *aver* does not necessarily mean a charge or statement in the indictment. It is used as synonymous with the word *prove*. If it does not mean this, the statute is nonsensical. Webster defines aver (from the French *averer*) to affirm with confidence, to declare in a positive manner; and he defines averment, in pleading, an offer of either party to justify or prove what he alleges; verification, an establishment by evidence. Ainsworth, in giving the corresponding Latin word for averring or averment, gives *confirmatio, probatio, testimonium*. Boyer, in stating the corresponding French words, for averment, gives, *verification, preuve.*—See Bouv. L. Dic., tit. Aver, 157. The word *aver*, then, is used as equivalent to *prove;* otherwise the sentence cannot be grammatically construed. The word " or," between aver and prove, should have been " nor," to sustain the position assumed by the Attorney General.

6. The indictment then is defective in not alleging the name of the owner, master or overseer of the slave; or, if unknown, in not alleging that fact. The owner, &c. must be alleged in the indictment, otherwise the defendant cannot make his defence, cannot know how to defend.

7. Unless the meaning contended for is given to aver, then we say the statute is unconstitutional. Our Bill of Rights provides that no person shall be prosecuted, except by indictment.—See Bill of Rights, defined in The State v. Middleton, *supra.* What is an indictment? It is a brief statement in writing of the facts which constitute the offence. It is no indictment in contemplation of law, unless it shows on its face that an offence has been committed.—The State v. Phil, 1 Stew. 31. The Legislature cannot dispense with the necessity of an indictment, in any prosecution for an offence. Can the Legislature dispense with the necessity of charging the constituents of the offence? Can the Legislature dispense with the necessity of charging the offence in the indictment? If it can do this, then it might dispense with the indictment itself, the indictment being but a statement of the facts constituting the offence.—See The State v. Middleton, *supra.*

8. If courts can give a construction to a statute, consistent

with the constitution, they will do so; they will not lightly presume that the Legislature has violated the constitution. It therefore becomes the duty of the court so to construe the statute as to make it harmonize with the constitution, if possible. By the construction here contended for, we make the law and the constitution harmonize, and it can be done in no other way; in no other way can we avoid the inconsistencies and absurdities of the statute itself.

9. The charge of the court, as shown by the bill of exceptions, is wrong. A verbal permission given by the master, expressing the articles in general terms, is a sufficient protection under the statute.

ATTORNEY GENERAL, for the State:

1. The Act of 1850 dispenses with the necessity of averring the name of the owner, master or overseer of the slave, or that their assent was not obtained.—See Acts, 1850, p. 51, sec. 1.

2. There were two modes of proceeding against a party charged with the commission of an offence, by information and by indictment. The 12th section of the Bill of Rights merely takes away the proceeding by information, and leaves all the other modes of proceeding known to the common law. The only other mode was by indictment, and to that extent only is it sanctioned by the constitution. The proceeding by indictment is not expressly recognized by the constitution, but stands in every respect as it stood at the common law, and the Legislature has the right to alter the requirements of an indictment; and so the party indicted is "informed of the nature and cause of the accusation," that is sufficient.

3. The general permission to trade, proven in this case, is not sufficient.—The State v. Hurt, Jan. Term, 1851.

CHILTON, J.—This was an indictment for trading with a slave. The indictment charges that the plaintiff in error, at a certain time and place therein specified, "did sell to a negro man slave named Ben certain commodities, to-wit, one bowl, of the value of twenty-five cents, and one set of plates of the value of fifty cents, contrary to the statute in such cases made and provided," &c.

It is objected to this indictment, that it fails to state the constituent elements of the offence, in that the name of the owner of

35

the slave is not stated, and that it is not averred that the commodities were sold against the consent of the master, owner or overseer, &c.

By an act of the Legislature, passed the 7th February, 1850, (Pamphlet Acts of 1850, p. 51,) it was enacted, " That hereafter, on trial of any person indicted for trading with a slave, as now provided for by law, it shall not be necessary, in order to conviction, for the State to aver or prove who was the master, owner, or overseer of such slave; nor that the leave or consent was not given," &c. In the absence of the statute just quoted, this would clearly be a bad indictment. But we entertain no doubt that the statute was designed to remedy the defects which otherwise would have existed in the failure to discribe the owner and to negative the consent of the master, owner, or overseer.

After a careful consideration of the statute, and the construction contended for by the counsel for the plaintiff in error, we are satisfied that its effect is not to be restricted to the proof to be made upon the trial before a petit jury, but that it extends and was designed to apply also to the indictment. By the terms, " on the *trial* of any person," &c., we must understand the *prosecution* of any person, the word " trial" being used in its comprehensive sense, as embracing all the proceedings down to the acquittal or conviction of the party. But it is supposed that the remaining portion of the clause, namely, "indicted for trading with a slave, as now provided for by law," &c., shows that that the indictment must contain the same averments as were required under the previous act, and that this statute had relation alone to the proof. We do not think that such was the intention; for, if we give the sentence this meaning, we render a substantive and important portion of the enactment wholly nugatory. We allude to the subsequent part of the same clause, which says, " it shall not be necessary to *aver* or prove," &c. We think the meaning of the act is simply this, that in prosecutions against any person who may be thereafter indicted or proceeded against for trading with a slave, as that offence at the time of the enactment was defined or provided for by law, it should not be necessary to aver in the indictment or prove who was the master, owner or overseer of such slave, nor to negative their assent to such trading. The position that " aver" and

Hirschfelder v. The State.

"prove" are synonymes in their collocation in this enactment, cannot be supported.   True, the term " aver," compounded of the intensive syllable, a or ad, and verus, true, signifies to bear testimony to the truth; or rather, to aver, is to express the truth of a declaration unequivocally.—Crabb's Eng. Syn.   But when we speak of prosecutions by indictment, and say that it is unnecessary to aver or prove certain matters, we at once understand by the averment that the allegation of such matters is dispensed with *in the pleading*, and it requires no proof of them to warrant a conviction.   We must understand the term, aver, to signify what it usually means in the connection in which we here find it; and thus understood, we have no doubt but that the Legislature were endeavoring to cut off the chances of escape of those who might violate the law against trading with slaves, by rendering certain averments in the indictment, otherwise essential, unnecessary; and not being necessary to be averred, they need not be proved.   The contrary construction would present the anomaly of requiring that the indictment should charge an affirmative fact essential to its validity, but which it was unnecessary to support by any proof.   Such, for example, as the ownership of the slave.

But it is argued that if the effect of the statute is to dispense with these averments in the indictment, it is opposed to the constitution of this State, which substantially entitles the accused to demand an indictment, before he can be put on his trial for any indictable offence, unless in the cases excepted in the constitution, to which the case before us does not belong.   We think the counsel misconceive the effect of the statute.   It was certainly competent for the Legislature to enact that every person who should trade with a negro or mulatto should be liable to indictment, and should be fined on conviction, &c., unless the party so indicted should prove that the negro or mulatto was not a slave, or that being a slave, such trading was had by the permission of the master, owner or overseer.   This is the effect produced by the statute on the former law.   It makes the offence of trading with slaves indictable, leaving the exception as to the consent of the owner, overseer or master, to be proved by the defendant.   And, although the indictment must charge the trading to have been with a slave, yet the owner's, overseer's or master's name need not be stated.   This indictment, then, does

conform to the common law rule in describing the constituent elements of the offence, leaving the defendant to bring himself within the exception, by showing that although he traded with the negro man slave, named Ben, as charged in the indictment, yet he did so by the leave or consent of the master, owner or overseer.

The consent proven in this case, which does not express the articles to be purchased, is not such as the statute requires, and furnishes no protection to the accused.

After the best consideration we have been able to give this case, we are unable to see any error in the record, and the judgment must be consequently *affirmed.*