# Byers v. The State.

## Indictment for Murder.

|105  31|
|126  35|
|‾‾‾‾‾‾‾|
|105  31|
|133  64|
|‾‾‾‾‾‾‾|
|105  31|
|139  148|

1. *Application for change of venue; must be made as soon as practicable before trial.*—Under the provisions of the statute (Code, § 4485), an application for a change of venue in a criminal case must be made as soon as practicable before the trial is entered upon; and in a capital case, where the application is not made until the case is regularly called for trial, more than a month after the arraignment and two months after the indictment is returned into court, and no excuse is given for not having made the application earlier, such application is properly refused.

2. *Same; affidavits must state facts and not mere opinions.*—On application for a change of venue, affidavits expressing the mere opinions of witnesses, *pro* and *con*, unaccompanied by facts tending to support the conclusions expressed, are worthless as evidence; and when the statement in the petition and the opinion expressed in each affidavit in support thereof is, "that the feeling and prejudice against defendant is so wide spread and very strong that he could not get a fair and impartial trial," but the facts on which the affiants base their conclusions are not stated in the affidavits, the court properly declines to grant the application.

3. *Organization of jury; absence of juror selected.*—When in the organization of juries, one who was summoned for a juror appears, is

[Byers v. The State.]

examined, found competent and is assigned to a particular jury, but
is not sworn as a juror with the others assigned, but is allowed to go
while the court completes the panel, and fails to appear when called
upon the completion of the panel, the court properly proceeds, with-
out reference to said juror, to complete the organization of the juries;
and the absence of said juror furnishes no ground for quashing the
*venire* served on a defendant.

4. *Impeaching defendant testifying as a witness.*—When the defend-
ant in a criminal case testifies as a witness, his credibility may be im-
peached by inquiry into his general character, and the inquiry is not
limited to his reputation for truth and veracity.

5. *Evidence; when the fact that defendant offered to cheat deceased out
of money admissible.*—On a trial under an indictment for murder, evi-
dence that the defendant, who had been with deceased several days
before the homicide, and was aware that deceased had money in his
possession, and had proposed to one or more persons to aid him in
getting deceased engaged in a game of cards, so as to cheat him out
of his money, is admissible, in connection with the other evidence in
the case, to show the relation between the defendant and deceased
and as tending to show the intention of the defendant to get money
away from deceased.

6. *Charge of court to jury.*—A charge is properly refused which in-
structs the jury, "It is your duty to reconcile all the testimony if you
can, so as to make all the witnesses speak the truth, and if you can
not reconcile all the testimony, then you may reject what you be-
lieve to be untrue. But you can not reject the testimony of any wit-
ness capriciously, and if, on considering all the testimony, you still
remain in doubt as to the truth or falsity of any material fact, you
must give the defendant the benefit of the doubt, and acquit him."

7. *Same.*—On a trial under an indictment for murder, a charge to
the jury which instructs them, that "If the evidence leaves you in
any doubt as to whether the defendant was present at the killing of
the deceased, you must find the defendant not guilty," is erroneous
and properly refused.

APPEAL from the Criminal Court of Jefferson.

Tried before the Hon. SAMUEL E. GREENE.

The appellant was indicted, tried and convicted for
the murder of Eugene Walker, and was sentenced to be
hanged.

The evidence on behalf of the State tended to show
that Eugene Walker, the deceased, was killed by being
shot with a pistol near Birmingham in Jefferson county,
on Saturday night, January 6, 1894. The deceased had
been a soldier in the United Army for about five years,
and had been stationed in Nebraska; and his father
lived in Walker county, Alabama. He arrived in Bir-

mingham on the afternoon of Friday, the 5th day of January, 1894, on his way home to his father's, and stopped at the Metropolitan Hotel in Birmingham. The evidence further tended to show that about midnight Nathan Byers, a brother of defendant, saw defendant in a restaurant, and told him that his cousin, Eugene Walker, was in town and wanted to see him (the defendant). The defendant soon afterwards went to the Metropolitan Hotel and had deceased woke up, and they left the hotel together; during the balance of the night they were together in a certain restaurant and a bawdy house, with other persons, male and female. The deceased exhibited a roll of what appeared to be money in new "greenback bills." The defendant had a deck of playing cards, and proposed to gamble with deceased and others, and some playing was done. The evidence showed that on the next day, Saturday, the day of the murder, the deceased had a package of new crisp bills folded in a peculiar and unusual manner, in small squares lying one upon the other. Deceased and defendant continued together all during the day Saturday, and frequented different saloons and bawdy houses. The evidence further tended to show that at different times during the day, the defendant told several different parties that deceased had money, and that if they would go in a game of cards with him and help him work a trick, they could win deceased's money. Defendant and deceased were together all during the day, until shortly before 6 o'clock Saturday afternoon. About 6 P. M. the defendant tried to borrow a pistol from three different persons, but failed to borrow one. Between 6 and 6:30 the defendant went into the pawn shop of Mose Blank, and bought a Colt's pistol, 41 calibre, and loaded it in there. He was alone with Blank when he tried to borrow the pistol and when he bought it. The evidence further tended to show that the deceased and defendant were seen together by a number of witnesses on the Behren's Park car, which leaves town at 6 o'clock, but which left a few minutes late that evening, and that they rode to the end of the line, got off there and walked off from the car line in the direction of the place where the deceased's body was found, and this was the last time deceased was seen alive by any of the witnesses. Shortly before eight o'clock the defendant was seen in

[Byers v. The State.]

Birmingham on 20th Street and Avenue B, coming towards 1st Avenue. It had been raining and was probably raining then, and defendant stopped at Gaines' shoe store, and bought a pair of new shoes, leaving his old ones to be repaired, they being wet and muddy. The defendant turned away from the witness, who sold him the shoes, and took out some bills, which were seen by a witness on opposite side of house. He paid for the shoes with a ten dollar bill, which was introduced in evidence and which was creased in the same way as a bill which was given to another witness by deceased. Defendant admitted getting this bill from deceased in payment of a debt which deceased owed defendant. It was further shown that defendant returned to Blank's pawn shop and complained that the pistol was out of order and that he exchanged it for another, and then left them both there. That during the night he visited various bar-rooms, and was drinking heavily; that he exhibited money, gold and bills; that he inquired at several places for his cousin Eugene Walker, and appeared anxious as to his whereabouts, and expressed the fear that something had happened to him. The body of deceased was found near Behren's Park, about 1¾ miles from 20th Street and 1st Avenue, on Sunday morning (the morning after the murder), lying on his back, one hand in his pocket, a bullet hole behind his ear, and about fifteen cents in his pocket. He appeared to have been dead 12 or 15 hours. The evidence further tended to show that deceased and defendant both had on blue yachting caps during Saturday. Defendant was arrested Sunday afternoon charged with the murder of Eugene Walker. The pistol he bought and took off with him on being examined Monday morning, showed evidences of having been recently fired; and there was a piece of paper in the barrel, which defendant admitted on the stand came out of his pocket.

The defendant, testifying in his own behalf, denied that he had killed deceased, and said that he had not seen him since about 6 o'clock Saturday afternoon, when he parted with him on 1st Avenue and 20th Street, until he saw his dead body on Sunday afternoon. He further testified that from about 6:30 until nearly 8 o'clock he was in town, at places named, in company with two parties, Watkins and Smithson; that it was raining and

[Byers v. The State.]

his pistol got wet and he tried to dry it with some paper taken from his pocket. Defendant admitted being with the deceased all during Saturday, but denied that he made any attempt to win his money; that each had a deck of cards, and showed each other some tricks they knew, and some offers to bet were made during the day among others; but that he did not bet or offer to bet with deceased but once, and that was a short while after they met when he won three dollars from deceased on a trick, and that he then offered to return the money. On cross examination, defendant said he did not know whether or not he asked Oscar White to go in with him and work a trick on deceased and win his money. The witnesses Watkins and Smithson, testifying for the defendant, corroborated him in the main details as to his whereabouts between 6:30 and 9 o'clock.

The rulings of the court upon the motions for a change of *venue* and to quash the *venire* are sufficiently shown in the opinion, as are also the rulings of the court upon the evidence, which are reveiwed on this appeal.

Upon the introduction of all the evidence the defendant requested the court to give the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "It is your duty to reconcile all the testimony if you can, so as to make all the witnesses speak truth, and if you can not reconcile all the testimony, then you may reject what you believe to be untrue. But you can not reject the testimony of any witness capriciously, and if, on considering all the testimony, you still remain in doubt as to the truth or falsity of any material fact, you must give the defendant the benefit of the doubt, and acquit him." (2.) "Gentlemen, if the evidence leaves you in any doubt as to whether the defendant was present at the killing of the deceased, you must find the defendant not guilty."

GREENE & MONTGOMERY, for appellant.—1. The court erred in overruling the motion for a change of venue.— Abbott's Trial Brief, § 77; *Price v. State,* 8 Gill. (Md.) 295; Rapalje's Crim. Proced., § 159; *Hunnell v. State,* 86 Ind. 431.

2. The court erred in overruling the motion to quash the *venire* on account of the unexplained absence of the juror Walker.—*Parsons v. State,* 22 Ala. 50; *Posey v. State,* 73 Ala. 490; *Roberts v. State,* 68 Ala. 523.

3. The court erred in admitting the testimony of the witness McDonald as to the character of the defendant. 3 Price on Evidence, §§ 227–229; *Mitchell v. State*, 94 Ala. 73; *Evans v. Smith*, 17 Amer. Dec. 74 and notes; 3 Amer. & Eng. Encyc. of Law, note 2, 115; note 3, 117; *Chentree v. Ruggen*, 67 Barb. 124; *Sorrelle v. Craig*, 9 Ala. 534; *Hadjo v. Gooden*, 13 Ala. 718.

W. C. FITTS, Attorney-General, and J. J. ALTMAN, for the State.—1. The application for change of venue was unreasonably delayed.—*Shackleford v. State*, 79 Ala. 26; *Wolf v. State*, 49 Ala. 359. The application for change of venue does not set forth specifically the reasons for a change of venue; nor do the affidavits set out facts and circumstances sufficiently to show a fair trial could not be had.—*Seams v. State*, 84 Ala. 410; Code, § 4485.

2. The court clearly complied with the requirements of the special jury law in Jefferson county, in organizing the jury, and the motion to quash the *venire* on account of the absence of the juror Walker was properly overruled.

3. The evidence of the general bad character of the defendant was admissible as affecting his credibility as a witness.—*Jones v. State*, 96 Ala. 102; *Mitchell v. State*, 94 Ala. 68.

HARALSON, J.—1. In an application for a change of venue in a criminal case, the statute (Code, § 4485) requires the defendant, to state in his application to the court, "specifically, the reason why he can not have a fair and impartial trial in the county in which the indictment is found, * * * and [it] must be made as early as practicable before the trial, or may be made after conviction, on a new trial being granted, and the refusal of such application may, after final judgment, be reviewed and reversed on appeal." The word "trial," as employed in the statute, means, as has been elsewhere held, "the investigation of a matter in issue between opposing parties before a tribunal competent to decide upon it;" and that, "in a criminal case the term does not include the arraignment, or any other merely preparatory proceeding which may be taken prior to the time of administering the requisite oath to the jury." *Hunnell v. The State*, 86 Ind. 434; *United States v. Curtis*, 4

Mason, 232, 237 ; *Price v. The State*, 4 Gill, 297 ; Rapalje Cr. Pro., § 159.    When the statute uses the term, "as early as practicable before the trial," without more, it would mean, that unless the application is made before the trial is entered upon, and as early theretofore as practicable, the right is waived ; but, that provision is followed by the other—"or it may be made after conviction, on a new trial being granted."    Construing both provisions together, it would seem, that the defendant is not cut off, absolutely, from making the motion, if not done before the trial begins, but, that he must do so "if practicable,"—that is to say, if before the trial, he had been aware of the facts upon which he bases his application, and has had time and opportunity to present them to the court, he must have done so.    If he fail to make application before the trial, having had the opportunity, it is incumbent on him, to show sufficient excuse for the delay.—3 Amer. & Eng. Encyc. of Law, 102, § 5, and authorities cited.    It may appear that the grounds for the change originated after a trial, and may not have existed before, in which case, on a new trial being granted, by requirement of the statute, the application stands on the same footing as if made before the trial. All this suggests, that such applications should, for obviously good reasons, be made without unnecessary delay—as soon as practicable, without doing violence to right; and always on meritorious grounds ; or, for failure in either case, it will be denied.

This application was made when the case was first called regularly for trial.    "Immediately [as the bill of exceptions states] before any announcements were made, or any witnesses called, the defendant presented a motion for a change of venue."    The indictment, found at the January term of the criminal court, 1894, was filed in court on the 27th day of January ; and at that term—on the 2d of March, 1894—the defendant was arraigned in open court, his counsel being present, and pleaded not guilty.    At the same time, the cause was set down for trial, on Monday, the 9th day of April, thereafter, which was a day within the next succeeding April term of said court ; and on that day, after some preliminary steps, looking to the organization of juries for the trial of this and other capital cases set for that day, the case was called for trial, when said motion, as has been stated,

was made. The solicitor objected to the filing, hearing and consideration of said motion, on the ground that it came too late, and no reason was set forth for the delay in filing said application. It was allowed to be filed, and in support thereof, the affidavits of nine persons were submitted by the defendant. The bill recites, that "the court did not require the State to file any rebutting affidavits, nor were any filed, but the court overruled said motion of the defendant, and refused to grant him a change of venue," to which ruling the defendant excepted.

The only statement in the petition as a ground for the change is, "that the feeling and prejudice existing against him in this county is so wide spread and strong, that the defendant could not get a fair and impartial trial." No reason is assigned, why the application was not sooner made. The affidavits, like the application, are very general in their statement of facts, and the conclusion expressed in each affidavit is substantially in the same language—"that the feeling and prejudice against the defendant is widespread and very strong." The allegation of fact, as made by each of them, is to the effect that he had conversed with and heard expressions from a large number of people from different portions of the county. What these people said is not stated, except in two of the affidavits, one by Daniel A. Greene, who stated that he "heard a number of people go so far as to say, that defendant should not have the benefit of an attorney to make his defense;" the other, by J. T. Shugart, who deposed, "that numbers of people have said in his presence, that it would take mighty little evidence for them to convict defendant; that they would convict him on general principles."

It is well settled, that the mere expressions of opinions, that one accused of crime can or cannot have a fair and impartial trial, are worthless as evidence, *pro* or *con*, unless they are supported by sufficient reasons, testified to as facts.—*Salm v. The State*, 89 Ala. 56; *Hawes v. The State*, 88 Ala. 37; *Seams v. The State*, 84 Ala. 410. It must be admitted, that the application in its statement of the specific fact of prejudice against the defendant, such as it is averred will prevent his having a fair and impartial trial, is very general, as much so as it can well be made; and the affidavits in support thereof are

also very scant and unsatisfactory as to facts tending to support the conclusions expressed in each of them, of the existence and prevalence of the prejudice referred to. The court might well have declined to grant the application on this ground, and on the other, that defendant made no showing why he had not made earlier application before the trial. There appears, also, to have been no unusual difficulty in empanelling a jury, such as would have been encountered, if such a prejudice existed against the defendant as that set up in his application. We will not put the court in error for having denied the application under such circumstances.

2. There was no error in the ruling of the court, refusing to quash the venire, on account of the absence of the juror, Walker. The court was proceeding, in all respects, so far as appears, according to the amended act, "to expedite the trial of capital cases in Jefferson county," (Acts 1890–91, p. 561) ; and, as the bill of exceptions states, "While organizing the three regular juries of the week, C. C. Walker was present and sworn as to his qualifications and any excuse he might offer, and was told that he would be on jury No. 2, which was not completed ; and the court drew talesmen from the box in order to complete the panel. On the complete organization of said jury, the said C. C. Walker failed to respond to his name, and no showing was made or evidence given as to the cause of his absence, and the court organized the full juries for the week without said Walker." This party had not been sworn as a juror, but like the others, had been examined, alone, as touching his qualifications; and found to be competent to serve, he and the others were allowed to go, until the court drew and the sheriff went out and summoned—as required by said act—a sufficient number to complete the jury. When he had done this and the talesmen so summoned appeared, and the court was ready to proceed to complete the jury, Walker, without the authority of the court, was missing. It could not be tolerated, that his absence, under such circumstances, should balk the trial of the cause and the proceedings of the court. The court did right, to proceed without reference to said Walker, and complete the organization of the juries.

3. Nor was there any ground for the complaint made, as to the impeachment of the defendant—who had testi-

[Byers v. The State.]

fied in his own behalf—by the witness, McDonald. The question propounded to him was: "Do you know the general character of Eugene Byers in the neighborhood in which he lives?" This was objected to by defendant's counsel, because, as stated, "his character is not admissible, only as far as truth and varacity are concerned." The objection was properly overruled. General bad character, simply, may be proved, to impeach a witness, without asking the further question of the impeaching witness, if he would believe him on oath in a court of justice.—*Mitchell v. The State*, 94 Ala. 73 ; *Birmingham U. R. Co. v. Hale*, 90 Ala. 11. The inquiry may also be extended, but not limited, to his character for truth and veracity.—*Davenport v. The State*, 85 Ala. 338. The court held the witness steadily to the preliminary question—though he answered evasively a good many times, as most witnesses do, from a want of understanding—whether he knew the defendant's general character? to which witness replied, he did, and that it was bad.

4. A witness for the State testified that while defendant, deceased and two or three others, were at a table in a restaurant, on Saturday morning, the day of the killing, defendant offered to bet "that he could make high, low, Jack and the game on his hand ;" and another testified, that on Saturday, while defendant, deceased and others were in a saloon, defendant had a deck of cards, and taking witness to the rear of the saloon, told him, if "he would go in with him, and help him work a trick at cards, they could win some money from Walker," the deceased ; and still another, that defendant proposed to go in with him and fix the cards so that they could win money from deceased ; all of which the court allowed against the objection and exception of defendant. This evidence was admissible in connection with the other evidence in the cause, to show the relations between the defendant and deceased ; that defendant was endeavoring to ascertain what money he had and that he was purposing to get it by devious ways.

There were a number of other rulings of the court on rejection of evidence, to which exceptions were reserved, but which are not insisted on in the brief of counsel for defendant. We have examined them, and finding the

most of them so clearly without merit, we need not consider them.

The two charges requested by defendant and refused were manifestly illegal.

We find no error in the record, and the case must be affirmed. It appearing that the day fixed for the execution of the sentence of the law has passed, this court now appoints Friday the 8th day of February, 1895, as the day on which the proper executive officer of the county of Jefferson, in the manner required by statute, will execute the sentence of the law, as pronounced by the court.

Affirmed.


*Indictment for Murder.*

