83 So.2d 613

Francis Louis BERNESS

v.

STATE.

8 Div. 742.

Supreme Court of Alabama.

June 16, 1955.

Rehearing Denied Nov. 17, 1955.

T. Eugene Burts, Jr., Florence, opposed.

MAYFIELD, Justice.

John Patterson, Atty. Gen., and L. E. Barton and Owen Bridges, Asst. Attys. Gen., for petitioner.

The defendant, Berness, was convicted of murder in the second degree. The Court of Appeals reversed and remanded this

judgment. The State, through its Attorney General, petitioned this court for certiorari to review and revise the judgment of the Court of Appeals. The reversal by the Court of Appeals was based on admonitions and instructions given to certain members of the jury, outside of the court house, during the noon recess, in the absence of the defendant. The pertinent interchanges between the judge and members of the jury were reported in the opinion which we here review:

"After the hearing and arguments had been completed, but before the court had instructed the jury, the court declared a noon recess. The jury were permitted to separate, but cautioned by the court not to discuss the case either among themselves or with anyone else.

"As appellant's attorney was returning to the court house after lunch, accompanied by another attorney, they observed on a corner near the court house several of the jurors in conversation with one of the State's main witnesses. There was also in the group Mr. Luther Tays, a distant relative of the deceased girl.

"As the two attorneys passed the group one of them remarked 'There goes Berness' lawyer.' The two attorneys passed on down the street, and after discussing for a few minutes what they had seen, they proceeded to the chambers of the trial judge. Judge Hill was then in the Register's Office, which adjoins his private office, reading decisions in preparation for his oral charge. As to what occurred from this point we quote the following excerpt from Judge Hill's statement read into the record on the hearing on the motion for a new trial:

"'At approximately 12:45 p. m. someone knocked on the door and I opened it and found that Mr. Eugene Burts, Attorney for the defendant, Berness, together with a friend of his, a lawyer, Mr. Emmett Roden, wanted to see me. They stated that they had seen one of the State's witnesses, to-wit: Mr. Grady P. Yancey, talking to one or more jurors on the south-east corner of the intersection of Court and Tennessee Streets, which point was visible from the office in which I was working and in which the three of us were then standing. They directed my attention through the window to the group, and I saw some men standing and talking, though I could not make out who it was. I then stated to Mr. Burts that I was very sorry this circumstance had arisen, that I had instructed and reinstructed the jury not to talk to anyone about the case, etc., but that I would go down there immediately and see what they were talking about and tell them that they should not talk to any witness in the case about any subject—or words to that effect. I do not remember whether the Attorney for the defendant made any reply to this suggestion on my part, or any statement whatsoever concerning it.

"'I went to the corner in question and saw two or three jurors, whose names I do not remember, but Mr. Grady P. Yancey was not there at that time. I then told these jurors that it had been reported to me that a witness for the State had been talking to them on that corner a few moments before. I told them, in substance, that we had to be very, very careful about the actions of jurors during recesses in cases in court, and that they should not engage in conversation with any person who had been a witness in a case, or who had anything to do with the case, or who might have any interest in the case one way or the other, and that they should not let any such person converse with them. I further stated that it would be bettter for them not to talk to anybody in the case, or any such person who might have any interest in the case about any subject, not about the weather or any such innocent subject. These three men assured me at that time that no one had talked to them about anything concerning the case at trial.

" 'I then left that corner; crossed the Street, went into the second store from the corner, which was Milner's Drug Store, and there found Mr. Grady P. Yancey. I told Mr. Yancey that it had been reported to me that he had been seen talking to one or more of the jurors. Mr. Yancey quickly told me that he had not meant any harm and was sorry that he had talked to any of the men at all on the street corner, but that he had merely told one man that some man named Williams, who had been absent from this County approximately fifty ·years was back in the County and wanted to see some kinsman of one of the jurors, or words to that effect. I told Mr. Yancey that it would be better for him not to talk to any juror about any subject—the weather or otherwise. I then ate my lunch in Milner's Drug Store and returned later to the Court-room.' "

We granted certiorari to consider the State's contention that the Court of Appeals erred in holding "that any communication between the trial court and a member or members of the jury during recess and outside the courtroom negates the court's jurisdiction to render judgment". As a basis for the above pronouncement, the Court of Appeals relied on Neal v. State, 257 Ala. 496, 497, 59 So.2d 797, 798, wherein this court held:

"It is settled that the continuous presence of the defendant from arraignment to sentence is an essential part of the process provided for the trial of the defendant and without which the court has no jurisdiction to pronounce judgment against him. * * *"

Neal v. State, above, was a criminal prosecution for a *capital* felony and this fact must be borne in mind when we consider the applicability of the above statement to the present factual situation.

We view the determinative questions here presented as: (1) Whether the strict and inflexible rule above quoted from Neal v. State has applicability in non-capital felony cases. (2) And, whether or not, the rule if applicable, should· be applied to the case at bar. We are cited no cases wherein these precise questions have been decided by this court.

■ It is fundamental that a defendant has the right to be present at every stage of his trial for the commission of a felony. His presence is in fact essential to the validity of his trial and conviction unless there has been a clear and unequivocal waiver of this right by the defendant. Frost v. State, 225 Ala. 232, 142 So. 427. We are not here dealing with the absence of counsel from the courtroom during a part of the proceedings as was discussed in our very recent case of McCall v. State, 262 Ala. 414, 79 So.2d 51. Any re-examination and comment upon that opinion by this writer would be obiter dicta.

Without recourse to decisions of other jurisdictions, let it suffice to say that we are clear to the conclusion that the admonitions and instructions given by the trial judge to the jurors, during the noon recess, in the absence of the defendant constituted error unless such irregularity was properly waived by the defendant.

■ We hold the view here, as in the case of Lee v. State, 244 Ala. 401, 13 So.2d 590, 592, that the inflexible rule which prohibits the defendant from waiving his right to be present at any stage of· his trial, should be limited to capital felony cases. This standard is the prevailing rule in most jurisdictions. In Lee v. State, supra, the following statements are found:

"The following is quoted * * * from 23 C.J.S., Criminal Law, § 975, pp. 309, 310: 'The right to be present during the trial of an indictment for felony cannot be waived by accused in a capital case.' That authority proceeds also to observe: 'In felony cases not capital, it is the rule in most jurisdictions, generally on the theory that the rule requiring accused to be present at the trial is essentially for his benefit * * * that accused may waive his right to be present.'

"Some of the strong statements to the effect that a defendant in any felony

case cannot consent for any step in the proceeding to be conducted without his personal presence are in opinions based on a statute which is mandatory that in felony cases, as in Virginia, 'the defendant must be personally present at the trial.' * * *

"The argument, however, extends beyond those statutes and cites the broad public interest in life or liberty of a person and his welfare which the state entertains. But this view is not generally shared in cases not capital. For it is said in Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 254, 56 L.Ed. 500, * * *: 'But, where the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present.' * *"

We now deal with the method by which the defendant's clear and unequivocal right to presence at every stage of the trial may be waived. The great weight of authority is summed up in the simple statement found in 23 C.J.S., Criminal Law, § 975, p. 311:

"It is generally held that a waiver of accused's right to be present during the trial, when permitted, must be made by him personally, and that the right cannot be waived by his counsel unless accused authorizes him so to do. * *"

▪ Our Alabama cases make it clear that the right of the defendant to be present when a felony verdict is returned cannot be waived, unless such waiver is made in the presence of the defendant, by his consent, or with his acquiescence. Consent or acquiescence cannot be presumed and must affirmatively appear from the record. Lee v. State, supra; Wells v. State, 147 Ala. 140, 41 So. 630; Cook v. State, 60 Ala. 39, 31 Am.Rep. 31. We see no reason why a less stringent rule should be applied to the defendant's "right of presence" at other stages of his trial.

▪ We are of the opinion that a criminal defendant in a non-capital felony case may waive his continuous presence at the trial. But that this waiver must be of an affirmative and positive nature and made by him personally, as for example where he voluntarily absents himself from the courtroom during the conduct of his trial. Our holding that such conduct constitutes an affirmative and voluntary waiver of the constitutional right, personal to the defendant, is consistent with the holding in McNutt v. State, 25 Ala.App. 129, 142 So. 773, certiorari denied 225 Ala. 282, 142 So. 774.

▪ Let us now bring these general principles to bear on the instant case. As was pointed out by the Court of Appeals, "the spontaneous actions of the very able trial judge were motivated by his earnest desire to see that this case was conducted according to all of the rules of trial procedure, the observance of which he had studiously enforced so long as the participants were under his direct and orderly control."

As laudable as were the attempts of the trial judge to antidote the drop of poison injected into the trial by the jurors' failure to observe his instructions; nevertheless, he was debarred from any intercourse relative to an important incident of the trial with the jurors except in the presence of the defendant, and also his counsel if counsel was reasonably available.

Objection to the admonitions and instructions given by the trial judge to the jurors in the absence of the defendant was made for the first time by motion for a new trial. A valid waiver of defendant's right could only be inferred from the defendant's, or his counsel's, failure to make proper objection and motion prior to the conclusion of the trial. The inference from the record is that the defendant personally had no knowledge whatsoever that such a conversation was taking place. And it is further inferrable, that the contents of the conversation between the judge and jurors was unknown until such time as the judge dictated into the record his actions and con-

versation with the jurors on the hearing of the motion for new trial.

It is not necessary, however, for us to make these inferences to arrive at a proper decision of this case. For, if counsel was without power to waive this right which was personal to the defendant, the accused was not constitutionally uncloaked by his counsel's passive acquiescence.

We therefore conclude that the defendant, Berness, did not waive his right to be present at the interchange between judge and jurors that occurred outside of the court house.

It follows that the judgment of the Court of Appeals is due to be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.

On Rehearing.

MAYFIELD, Justice.

The State's application for rehearing is based on the following contentions:

"1. A communication between the trial judge and two or three jurors on the street during the noon recess is not a part of the trial.

"2. In every other jurisdiction * * situations of this kind have been treated as extrajudicial communication with the juror, and have been decided under the prevailing rule in those jurisdictions pertaining to such communication."

In seeking a definition of the word "trial" by our Alabama courts, we are cited to the cases of Hirshfelder v. State, 19 Ala. 534, 539; Byers v. State, 105 Ala. 31, 16 So. 716; Denson v. Caddell, 201 Ala. 194, 77 So. 720; Lee v. State, 31 Ala.App. 91, 13 So.2d 583. The State contends that these cases are authority for the proposition that a recess or any occurrence during the recess thereof, outside of the court house, is not a part of the "trial". We have carefully considered these cases and do not consider them authority directly, or by infer-

ence, for the proposition for which they were advanced. The State further cites the cases of State v. Neal, 350 Mo. 1002, 169 S.W.2d 686, 693; and State v. Spotted Hawk, 22 Mont. 33, 55 P. 1026, 1028. These cases are not applicable to the situation in the case at bar. The first case dealt with the defendant's absence from the court room during a motion to quash an information, and the second case dealt with defendant's absence during an argument on a demurrer to an information.

■ In a criminal cause, the term "trial" does not include the arraignment or other merely preparatory proceeding which may be taken prior to the time of the administering of the requisite oath to the jurors. Byers v. State, 105 Ala. 31, 16 So. 716, 717, supra; Hunnel v. State, 86 Ind. 431, 434; McCall v. United States, 1 Dak. 320, 46 N.W. 608, 611; United States v. Curtis, 25 Fed.Cas. pages 726, 727, No. 14,905; Commonwealth v. Soderquest, 183 Mass. 199, 66 N.E. 801, 802. The word "trial" when used in connection with criminal proceedings means proceedings in open court, after pleadings are finished, down to and including rendition of the verdict. Rosebud County v. Flinn, 109 Mont. 537, 98 P.2d 330, 333. Therefore, the Neal Case and the Spotted Hawk Case, supra, are not precedent for the present situation.

■ We cannot agree with the validity of the State's argument to the effect that as he court had declared a short recess, the "trial" was not then in progress so as to require the presence of the defendant at the time additional admonitions and instructions were given to some members of the jury by the presiding judge.

It is necessary for the orderly administration of justice that the trial court have disciplinary power over the jurors, the parties, and officers of the court, continuously from the beginning of the trial to the final return of the verdict. The manner in which the trial court exercises this discipline, is a matter of supreme interest to the defendant. Unless he voluntarily absents himself, he and his counsel, if reasonably available have a right to be pres-

ent at every exchange between the judge and jury, where the conversation is germane to any important incident of the trial.

The State next contends that the instructions and admonitions which the distinguished trial judge gave the offending jurors was "an extrajudicial communication between judge and jury". On the contrary, the inquiry conducted by the judge among the offending jurors outside the court house went to the very heart and essence of the validity of the trial. The judge's investigation was directed to the question of whether or not some members of the jury had disregarded his instructions and admonitions just prior to the noon recess by having improper communication with a distant relative of the deceased girl during the course of the trial. As laudable as were the motives of the trial court, the admonitions and additional instructions which he gave these jurors outside of the court house, were an important incident of the trial. This being true, it required the defendant's presence and the presence of his counsel, if reasonably available. The judge undoubtedly realized that unless he took immediate and summary action to see that his prior instructions were carried out by the jurors, he would have to declare a mistrial. Beyond peradventure, that was the reason that he did not recall the jury in the presence of the defendant.

Nevertheless, had the defendant and his counsel been present at the time the judge investigated this misconduct on the part of the jurors, they may well have deemed it advisable to request the trial judge to press the investigation further or give additional instructions or admonishments to the recalcitrant jurors. Had they been present, the defense may well have deemed the misconduct of the jurors sufficient basis for a motion for a mistrial. The defendant did not learn of the exact nature of the judge's finding until he dictated a statement into the record on motion for new trial. We cannot, therefore, say that this was error without injury. We believe the motion for a new trial should have been granted.

All contact between an impaneled jury, counsel for the parties, and other officers of the court, which does not occur in open court, should be avoided. However, we do not wish to be understood as saying that where there are normal exchanges of conversation between officers of the court, or others not connected with the trial or an important incident of the trial, that such conversations can be made the predicate for error.

Opinion modified and extended; application for rehearing overruled.

LIVINGSTON, C. J., and SIMPSON and STAKELY, JJ., concur.

LAWSON, GOODWYN and MERRILL, JJ., dissent.