Appellant, Carlton Calhoun, was convicted, after a jury trial, of the offense of robbery in the first degree, as proscribed by § 13A-8-41, Code of Alabama 1975. He was sentenced, as a habitual offender with seven prior felony convictions, to life imprisonment *Page 261 
without the possibility of parole.
The state's evidence shows that appellant entered a business establishment in Selma, selected a bottle of wine from a cooler, placed it on the checkout counter, and presented money for payment. When the owner of the business opened the cash register to make change, appellant pointed a pistol at him and ordered him to remove the money from the cash register and put it in a paper sack. After complying, the owner was ordered to lie on the floor behind the counter. As he lay on the floor, appellant leaned over the counter and pointed the pistol at him. The owner grabbed his pistol from under the counter and shot appellant in the chest. Appellant, seriously wounded, fell to the floor. The owner then called the police. When the police arrived, they found appellant's pistol on the floor near him, along with the paper sack containing the money from the cash register. The bottle of wine was on the counter. There were no other persons in the store at the time of the robbery.
Appellant, in his testimony before the jury, denied that the robbery occurred. He claimed that he and the owner had become engaged in an argument over the amount of change due him from the purchase of the wine. He contended that the owner became enraged, shot him, and planted the pistol and sack of money near him to make the incident appear to be a holdup. Appellant does not question the sufficiency of the evidence to support the conviction. He raises seven issues on appeal.
 I
Appellant first contends that his absence from the voir dire examination of the jury venire and the jury selection proceedings constituted reversible error. We disagree.
The court called the docket at 9:00 a.m. and indicated that appellant's case was "either to be the second or third case for trial, possibly the fourth, depending on some pleas to fall in front of it." It appears that the court then had the members of the jury venire stand and identify themselves and give their occupations and their spouses' occupations. It can be inferred from the record that all the defendants, including appellant, to be tried that day were present with their counsel during this proceeding. Apparently, the court then proceeded with voir dire examination and jury selection in another case, during which time appellant left the courthouse. There is nothing in the record to indicate that his absence was not voluntary.
At 11:50 a.m., the court announced that it was ready to proceed with the voir dire examination and jury selection in appellant's case. Appellant was not present, and the court gave appellant's attorney, the baliff, and the deputy sheriff ten minutes to search for him. There was some discussion about forfeiting appellant's $50,000 bond. Appellant's attorney, recognizing the inconvenience being caused the court by his client's absence and in apparent deference to the court, agreed to waive the presence of appellant and proceed with the voir dire examination of the jury venire and the jury selection. The court stated that it would proceed with the jury selection process without appellant and, if appellant had not returned when the time came to proceed with the trial of the case, it would enter a forfeiture order on his bond and issue a writ of arrest.
The voir dire examination was general and included questions intended to reveal if anyone on the panel was related to appellant, the witnesses, or the attorneys, or knew anything about the alleged crime. One juror stated that she was personally acquainted with appellant, and appellant's mother was on the panel. It appears that the jurors had had occasion to observe appellant earlier in the day sitting at the counsel table when the venire was being initially organized. There was only one challenge for cause. The prosecutor challenged appellant's mother, and the challenge was granted. A jury was selected, consisting of twelve persons and one alternate.
At approximately 1:30 p.m., after a lunch break, the jury was sworn and the state called its first witness. Although the record does not specifically reflect the presence *Page 262 
of appellant after the lunch break, his presence can be deduced from the fact that the state's first witness, the victim, made an in-court identification of appellant. Appellant made no objection to the proceedings which had taken place during his absence, the trial court did not address the matter, and the trial continued to its conclusion. Appellant did not raise the issue in his motion for a new trial, but raises it now, for the first time, on appeal. Appellant argues that his absence during the jury selection process entitles him to a new trial.
A defendant is entitled to be present at every stage of his trial; however, in a non-capital felony case, he may waive his right to continuous presence. Young v. State, 455 So.2d 208
(Ala.Cr.App. 1984). This waiver must be made by him personally and must indicate an affirmative intention to waive his presence as, for instance, by voluntarily absenting himself from the trial itself. Diaz v. United States, 223 U.S. 442,32 S.Ct. 250, 56 L.Ed. 500 (1912); Berness v. State, 263 Ala. 641,83 So.2d 613 (1955); Young v. State, supra; Haynes v. State,40 Ala. App. 106, 109 So.2d 738, cert. denied, 268 Ala. 546,109 So.2d 746 (Ala. 1959). Where the offense is not capital, a defendant's voluntary absence, after the trial has begun in his presence, does not void the proceedings up to that point nor prevent the trial court from trying the case to conclusion and operates as a waiver of his right to be present. Taylor v.United States, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174
(1973); Diaz v. United States, supra; Young v. State, supra. A defendant who voluntarily absents himself from his trial proceedings may not later seek to profit from his own action by attacking the validity of the judicial process. Thomas v.State, 395 So.2d 1105 (Ala.Cr.App. 1981). "The word `trial' when used in connection with criminal proceedings means proceedings in open court, after pleadings are finished, down to and including rendition of the verdict." Berness v. State,263 Ala. 641, 646, 83 So.2d 613, 618 (1955).
A defendant has the right to be present at the examination and selection of the jury. Knight v. State, 273 Ala. 480,142 So.2d 899 (1962). A defendant may waive his right to be present and, if he voluntarily absents himself from any part of the examination and selection process, he will be deemed to have waived such right. Stinson v. State, 223 Ala. 327, 135 So. 571
(1931); 3 Wharton's Criminal Procedure, § 479 (C. Torcia 12th ed. 1972).
In the instant case, appellant was present when his trial commenced. The trial commenced when the jury venire was initially assembled and asked the general questions pertaining to identification and occupations. Thereafter, appellant voluntarily absented himself from the proceedings. We are of the opinion that appellant waived his right to be present in this instance.
Even though we have gratuitously addressed the merits of this contention, the initial question which must be decided is whether there was a proper presentation and reservation in the trial court of error so as to lay the predicate for appellate review. Matters not objected to in the trial court cannot be considered for the first time on appeal, since review on appeal is limited to those matters on which rulings are invoked at nisi prius. Biddie v. State, 516 So.2d 846 (Ala. 1987); Harrisv. State, 347 So.2d 1363 (Ala.Cr.App. 1977), cert. denied,347 So.2d 1368 (Ala. 1977); Daniels v. State, 53 Ala. App. 666,303 So.2d 166 (1974). The plain error doctrine applies only to death cases. Biddie v. State, supra; Harris v. State, supra. Even constitutional rights have to be raised seasonably in the trial court in order to be considered on appeal. Fuller v.State, 269 Ala. 312, 113 So.2d 153 (1959), cert. denied,361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960); Harris v. State, supra. Even those matters which result in ineradicable harm must at least be called to the attention of the court by a motion for a new trial. Harris v. State, supra.
In the instant case, there is no ruling presented for review. Appellant did not object to the proceedings which took place during his absence, i.e., the voir dire examination and the striking of the jury. *Page 263 
Not only did he not object at any time during the trial of the case, but he did not raise the issue in his motion for a new trial. He raises it for the first time in the appeal. The purpose of objection is to challenge the correctness of the action of the trial court so that such action may be corrected by the court itself, if deemed erroneous, and to lay the foundation for review, if necessary, by the appellate tribunal.Knight v. State, supra. In the absence of objection to the proceedings conducted by the trial court during appellant's absence, this action of the court cannot be made a predicate for reversible error. We are precluded from reviewing this matter.
 II
Appellant contends that error was committed when the prosecutor made comments concerning forfeiture of appellant's bond in the presence of the jury venire. When it was called to the court's attention that appellant was absent and when the court decided to proceed with the jury selection process, the prosecuting attorney asked the court to enter a forfeiture of appellant's appearance bond and stated that, due to appellant's prior record, he thought the present bond was inadequate. Contrary to appellant's assertions in brief, the record shows that these comments were made outside the hearing of the jury. In addition, appellant made no objection to the remarks, and no ruling was made by the trial court concerning the remarks. Hence, no question on this matter is presented for review.
 III
Appellant contends that reversible error occurred because the prosecutor, in exercising his peremptory strikes, systematically excluded black persons from the jury on the basis of race, in violation of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). He raised this issue for the first time in his motion for a new trial. The prosecutor objected to the trial court's consideration of the issue on the ground that appellant's objection was untimely. The trial court, holding that the issue could be raised on motion for a new trial and without first making a finding that a prima facie case of discrimination had been made by appellant, required the prosecution to give its reasons for striking the venirepersons. After hearing the reasons, the trial court found that the prosecution had used race-neutral reasons in exercising its peremptory strikes.
An objection to any alleged Batson violation must be timely. Timeliness in this instance would indicate that the objection should be made early enough to give the trial court sufficient time to take corrective action without causing undue delay if it deemed such action necessary. We have held that the proper time to raise such an objection is after the peremptory strikes have been made, but prior to the jury's being sworn. Kemp v.State, 516 So.2d 848 (Ala.Cr.App. 1987); Raines v. State,515 So.2d 82 (Ala.Cr.App. 1987); Thornton v. State, 513 So.2d 83
(Ala.Cr.App. 1987); Swain v. State, 504 So.2d 347 (Ala.Cr.App. 1987). In Swain, 504 So.2d at 349, we quoted with approvalWilliams v. State, 712 S.W.2d 835, 840 (Tex.Dist.Ct.App. 1986), where the court held, "In light of Batson, the proper time to raise such an objection was after the peremptory strikes had been made, but prior to the jury being sworn." The Fifth Circuit Court of Appeals addressed this issue in United Statesv. Erwin, 793 F.2d 656 (5th Cir.), cert. denied, 479 U.S. 991,107 S.Ct. 589, 93 L.Ed.2d 590 (1986). In Erwin, the defendants waited a week after the jury was selected before moving to strike the panel. The jury had not yet been empaneled, the trial was about to begin, and all the unselected veniremen had been released. The Erwin court, in holding the motion untimely, stated, "The Court in Batson envisioned that a motion to strike would be made promptly, probably before the venire was dismissed. See [476 U.S. 79], at 99 n. 24, 106 S.Ct. at 1724 n. 24." 793 F.2d at 667. In so holding, the court placed emphasis on the difficulties such untimeliness would cause the court and the great delay in starting the trial if a new venire had to be drawn and summoned. The court also noted that the defendants offered no justification for their *Page 264 
delay in filing the tardy motion. In citing Erwin with approval in Edwards v. State, 515 So.2d 86, 96 (Ala.Cr.App. 1987), we stated the following: "When the objection is not timely made, the trial court is deprived of the opportunity to remedy the error and save the case. As a matter of common sense, the court should have the chance to hold a Batson hearing, and, if necessary, start the selection procedure over." In further addressing this issue, the Fifth Circuit Court of Appeals inUnited States v. Forbes, 816 F.2d 1006, 1011 (5th Cir. 1987), stated:
 "The `timely objection' rule is designed to prevent defendants from `sandbagging' the prosecution by waiting until trial has concluded unsatisfactorily before insisting on an explanation for jury strikes that by then the prosecutor may largely have forgotten. Furthermore, prosecutorial misconduct is easily remedied prior to commencement of trial simply by seating the wrongfully struck venireperson. After trial, the only remedy is setting aside the conviction. Batson, 106 S.Ct. at 1725. This is an equally important justification for the `timely objection' rule. [Footnote omitted.]"
In the instant case, there was no timely objection. Appellant waited until the trial concluded unsatisfactorily before raising the issue and insisting on explanations of the jury strikes. No justification has been shown for the delay in bringing the matter to the attention of the court. We conclude that Batson does not apply to this case. The trial court should have sustained the state's objection to the raising of theBatson issue in such an untimely fashion.
 IV
During a recess in the trial, the court allowed the jurors to leave the jury room. In going back and forth to the jury room, they passed through the courtroom where the trial judge was conducting other court business, including the taking of guilty pleas. Appellant, claiming that this activity could have prejudiced the jury against him, moved for a mistrial, which was denied.
We have examined the record in this case and find no evidence to support appellant's allegation that the activity in the courtroom during the jury's recess might have influenced the verdict of the jury or prejudiced appellant in any manner. We do not know what specific activity was taking place in the courtroom, or which jurors, if any, observed or heard anything. A trial court is allowed broad discretion in deciding whether to grant a mistrial, and a clear abuse of discretion must be shown in order to reverse the decision of the trial court to deny a motion for a mistrial. Davis v. State, 457 So.2d 992
(Ala.Cr.App. 1984); Rocker v. State, 443 So.2d 1316
(Ala.Cr.App. 1983). We find no abuse of discretion here, and the denial of the motion for a mistrial was proper.
 V
Appellant contends that the trial court abused its discretion in replacing an absent member of the jury with an alternate juror. After a night recess, a black female juror failed to return to court. The trial court delayed the trial for approximately 30 minutes and had the sheriff search for her. Being unable to locate her, the court replaced her with the alternate juror, a white male. The action of the trial court was proper and, under the circumstances, clearly not an abuse of discretion. Rocker v. State, supra; Ala. Code (1975), §12-16-100 (c).
 VI
Appellant claimed, in his motion for a new trial, that the Habitual Felony Offender Act, § 13A-5-9, Code of Alabama 1975, had been applied to him in a discriminatory manner. He accused the state of selective application of the Act. He contended that other persons have not been sentenced under the Act even though it was applicable to them, but offered no proof. Clearly, he failed to prove that the Act is being applied in a discriminatory manner or is selectively enforced.
It cannot be concluded that a defendant has been discriminatorily subjected to the Act, simply because others had not been *Page 265 
sentenced under the Act even though it was applicable to them.Love v. State, 507 So.2d 976 (Ala.Cr.App. 1986), aff'd,507 So.2d 979 (Ala. 1987). See also DeShazo v. City of Huntsville,416 So.2d 1100 (Ala.Cr.App. 1982). We find no merit in this contention.
 VII
Last, appellant contends that there was no allocution at sentencing. In a felony conviction, the sentencing court must ask the convicted person if he has anything to say as to why the sentence of the law should not be imposed on him. Anderson v.State, 434 So.2d 737 (Ala. 1983). Contrary to appellant's assertion on appeal, there was a sufficient allocution in the instant case. The trial record shows, on page 169, the following: "The Court: Mr. Calhoun, do you have anything you want to say to the court prior to sentencing? The Defendant: No, sir."
We have addressed all of appellant's contentions on appeal and have found no error. The judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.