STATE OF IOWA v. ERICH VON KUTZLEBEN, Appellant.

**Grand jury:** SPECIAL PANEL: RESIDENCE. There may be included in a special grand jury panel more than one person residing in the same township.

**Same:** DRAWING GRAND JURY. The manner of drawing a grand jury from a special panel is the same as where the jury is drawn by the clerk from the regular panel.

**Same:** APPOINTMENT OF FOREMAN. The court should appoint a foreman for the grand jury, but the statute is only directory and failure to make the appointment is without prejudice, where the indictment is voted by the seven members constituting the jury.

**Production of evidence:** CONTINUANCE. Where the witnesses relied upon to establish the defense of insanity are residents of a foreign country and there is a showing of diligence, but inability to procure the same because of insufficient time and funds, a continuance should be granted to give a reasonable opportunity to procure the same.

**Indictment:** DUPLICITY. An indictment can charge but one offense but it may be charged in different forms to meet the testimony.

**Same.** An indictment must be direct and certain in respect of the circumstances of the case where they are essential to constitute a complete offense; and the offense charged must in all cases be determined from the facts alleged in the body of the indictment; they cannot be aided by intendment, or an omission supplied by construction.

**Same:** MURDER IN ATTEMPTED ROBBERY. An indictment charging that defendant with intent to rob displaced the rails of a railroad for the purpose of wrecking a train, that a wreck ensued and

a certain person was killed as a result, does not charge murder within the meaning of the statute relating to murder committed in an attempt to perpetrate a robbery.

Instructions: MALICE AFORETHOUGHT: DEFINITION. Where the court in defining murder instructed the jury that malice aforethought is an essential element of the crime, a definition of malice aforethought should, in the instant case, have been given.

Non-expert evidence: SANITY. The evidence of non-expert witnesses called from the by-standers to express their judgment on the question of defendant's sanity, founded solely upon an observation of accused during the trial, is inadmissible.

Confession. A written confession of guilt if freely made should be considered by the jury and given such weight as it is entitled to, but if made by reason of any inducement it should not be considered; and where the evidence is conflicting regarding the character of the confession the issue should be submitted.

*Appeal from Iowa District Court.*— HON. O. A. BYINGTON, Judge.

THURSDAY, OCTOBER 24, 1907.

THE defendant was convicted of murder in the first degree, and from the judgment he appeals.— *Reversed,* and new trial awarded.

*Popham & Havner,* for appellant.

*W. H. Byers,* Attorney-General, *Charles W. Lyon,* Assistant Attorney-General, and *W. E. Wallace,* County Attorney, for the State.

BISHOP, J.— I. At the time and in the manner prescribed by law, twelve persons were drawn as the regular panel for the grand jury in Iowa county, for the year 1905. The March term of court for said county began March 13th and on that day the persons forming the panel appeared, and there was organized a grand jury for the term consisting of seven persons as required by law, one of whom, John Mulherin, was appointed and served as foreman. On March 17th

the jury made its report to the court and was excused from further attendance. Following this, the defendant, Von Kutzleben, was arrested charged with murder committed within the county. On April 13th on motion of the county attorney, the persons originally selected as the jury for the March term were recalled, and they appeared. The five remaining members of the panel for the year were also summoned and appeared. Each of the twelve members of the panel were in turn challenged for cause, and the challenges sustained. Thereupon the court ordered " that twelve names be drawn, from the grand jury list, and that a venire issue," etc. Acting under this order, the clerk drew from the list the names of twelve persons. Of such persons, three were residents of one township, two of another, two of another, two of another, and one from each of three other townships. And the persons whose names were thus drawn were summoned under venire and appeared. The court then directed the clerk to call the jurors into the box in the order in which they had been drawn from the list. The defendant here interposed the objection that the jurors had not been drawn, called, or summoned as required by law, and the objection was overruled. A juror being called into the box, the same objection was made, and the further objection that the juror was a resident of the same township from which others of the grand jurors were drawn. The objections were overruled. The same objections were made to each of the other jurors as called. In the case of each who had been preceded by another juror from the same township, and against whom challenge had not been allowed, the objection was sustained. In all other cases it was overruled. When seven had been selected, the defendant objected on the same grounds to the body as a whole, and this was overruled. No one of the seven was appointed and sworn as foreman. The oath administered was to the jury generally. Before the jury retired, however, the court called John Mulherin, one of the regular panel, who had been challenged for cause and the

challenge sustained, and he being the person who had acted as foreman of the jury as impaneled at its first sitting beginning March 13th, and directed him that, while he should not be present at or take any part in the deliberations of the grand jury, yet that he should remain subject to the call of the county attorney, and should indorse as foreman of the grand jury as a true bill any indictment found by the grand jury as impaneled against the defendant. On the following day, an indictment was returned against defendant by the jury of seven, and it bore the indorsement as a true bill by Mulherin as foreman. It was under this indictment that the defendant was placed on trial and convicted.

By the objections made, and by a motion in arrest, the defendant challenged the regularity and legality of the proceedings thus had leading up to the indictment. The contention, first in order, has relation to the drawing by the clerk of the special panel of grand jurors. It is a provision of the statute that the regular grand jury panel shall consist of twelve persons, whose names shall be drawn from the grand jury list; "but no more than one person shall be drawn as grand juror from any civil township," etc. "If more persons shall be drawn from any civil township than is hereby authorized, . . . it is the duty of the officer drawing such grand jury to reject all such names so drawn, and to proceed with the drawing until the required number of jurors shall be secured." Code, section 339. It is further provided by statute that the grand jury, when made up, shall consist of seven persons to be drawn from the panel of twelve. Code, section 5240. Where, however, a challenge to the panel is allowed, a new grand jury shall be impaneled to inquire into the charge against the defendant making the challenge. And "the names of jurors required to impanel a new jury shall be drawn from the grand jury list." If, in any given case, the grand jury has been reduced to a less number than seven by reason of challenges to individual jurors, "the additional jurors required to fill the panel shall

be summoned, first, from such of the twelve jurors originally summoned which were not drawn on the grand jury as first impaneled, or excused, and if they are exhausted, the additional number required shall be drawn from the grand jury list, and the court shall, when necessary, issue a venire," etc. Code, section 5246.

The contention for error first to be noticed is that the clerk in drawing the special panel gave no attention to the matter of the township residence of the persons whose names he drew, so that there was included in the

1. GRAND JURY: special panel: residence.

panel more than one person from each of four civil townships. In the view taken by the writer, with whom is WEAVER, C. J., the contention is meritorious and should be sustained. The majority of the court, however, think otherwise, and from this it results that the action of the trial court must be approved.

Next in order is the contention that error arose out of the manner of the drawing by the clerk, under order of the court, from the panel summoned under special venire to make up the jury. It will be observed that upon the coming of the jurors under the special

2. SAME: drawing grand jury.

venire the court ordered the clerk to make call thereof in the order in which they were drawn from the jury list. We are agreed that this was erroneous. Code, section 5240, provides for the manner of drawing a grand jury, and this is to be done by placing the names of the members of the panel in a box, " and after thoroughly mixing the same, he shall draw," etc. While the rule does not in terms make reference to a drawing from a special panel, it cannot be doubted but that such drawing was intended to be included. The majority of the court are of the opinion, however, that there was no prejudice to the defendant, for that it appears that each member of the panel was called into the box in turn, and the right of challenge given as to each.

The organization of the grand jury, and the indictment returned by it, is further challenged for that no foreman was

appointed and sworn as such, and the indictment returned
was not indorsed by the foreman or other mem-
ber of the jury as a true bill, but by a person
who was not a member of the jury. The statute is that every
grand jury must be officered by a foreman, and he must be
one of the persons impaneled as a member of the jury. Code,
section 5248. Evidently the court below took the view that,
as Mulherin had been appointed foreman on the impanel-
ment of the jury at the opening of the court for the term, he
would continue as such, notwithstanding the challenge al-
lowed as against him in this particular case; accordingly,
that it was not necessary to make any further appointment.
While we are agreed that this is not true under the reading of
the present statute, the majority of the court take the view
that the statute is to be considered as directory only, and
that, it appearing that the indictment was voted and returned
by the seven persons constituting the jury, there was no
prejudice.

3. Same: ap-
pointment of
foreman.

II. Having disposed of the matters of error lying back
of the indictment, we come now to consider the several con-
tentions based upon the rulings, etc., occurring upon the
trial. On June 17, 1905, the defendant, hav-
ing first pleaded not guilty to the indictment,
moved for a continuance of the cause to the
October, 1905, term of court. The showing for the continu-
ance made disclosure that mental irresponsibility on the part
of the accused was a matter that would be urged and relied
upon in making out his defense; that he (defendant) was a
native of Germany, and had been in this country but a short
time; and that it would be necessary to procure the evidence
to substantiate his defense from witnesses — the names of
whom and their precise place of residence was unknown —
residing in Germany. This motion was sustained. At the
October term of court, the defendant again moved for a con-
tinuance, and this motion was overruled. In the application
it was recited that, while the names of many of the witnesses,

4. Production
of evidence:
continuance.

and their place of residence, had been ascertained, yet, through lack of time and funds, their evidence had not been secured. We shall not set out the showing in full. It is sufficient to say that the desired evidence was material in character, and we think the showing as to diligence was sufficient. If the act committed as charged in the indictment was that of a crazy man, he could not, of course, be subjected to the punishment provided for by the law. And there could be no justification for putting him on trial without giving his counsel reasonable opportunity to bring the facts as to his mental competency before the jury.

III. As the judgment appealed from must be reversed, and the case remanded, we shall notice only such of the other errors contended for as are likely to arise upon a retrial of the case. And, first, as to the indictment: It is in three counts. The first charges that the defendant " committed the crime of murder in the first degree in and upon Alvin Hotchkiss, then and there being, willfully, maliciously, deliberately and premeditatedly, on the railroad of the Chicago, Rock Island & Pacific Railway Company, did, for the purpose and with the intent of perpetrating a robbery, willfully and maliciously disconnect the rails on said railroad and draw spikes securing said rails, and displacing said rails, for the purpose of wrecking passenger train No. 41 of said railway company, as aforesaid, and said train was wrecked by reason of the disconnection of said rails, and drawing of the spikes and displacing the adjoining ends of said two rails in opposite directions, for the purpose and with the intent of derailing and wrecking said train, and perpetrating a robbery from said wrecked train, and of the persons thereon, and the said train was wrecked by means of the aforesaid obstructions on said railroad, and the said Hotchkiss was fatally injured, . . . from which he died." It is conceded, for the purposes of our present consideration, that in each of the second and third counts was a charge of murder; the circumstances of the commission being somewhat differently stated.

At the close of the evidence for the prosecution, the defendant moved the court that the State be required to elect upon which count of the indictment it would rely for conviction, and this motion was overruled. We think that, as between the first count and the second and third counts, it should have been sustained. An indictment must charge but one offense, but it may be charged in different forms to meet the testimony. Code, section 5284. As we read the second and third counts, they were intended to charge but one offense, and that murder, and in the one the manner of commission is stated in somewhat different language from that found in the other. But we think the first count charges a distinct offense. It is urged on behalf of the State that advantage of this should have been taken by a direct assault upon the indictment. But this was not necessary. The question of duplicity may be raised by a motion to require an election. *State v. McPherson,* 9 Iowa, 53; *State v. Fidment,* 35 Iowa, 541.

5. INDICTMENT: duplicity.

We may premise by calling attention to some familiar rules of law having relation to the subject of indictments. It is the statute that every indictment must be direct and certain in respect of the particular circumstances of the offense, when, as in murder, they are necessary to constitute a complete offense. Code, section 5282. The offense charged must in all cases be determined by the statement of facts appearing in the body of the indictment. *State v. Wyatt,* 76 Iowa, 328; *State v. Gillett,* 92 Iowa, 527; 1 Bishop on Crim. Proc., section 416. And the statement of facts as set forth cannot be aided by intendment, nor can an omission be supplied by construction. *State v. Potter,* 28 Iowa, 554; *State v. Railway,* 63 Iowa, 508. Murder is defined by Code, section 4727, as the killing of a human being with malice aforethought. And by the following section it is provided, among other things, that: " All murder . . . committed in the perpetration, or at-

6. SAME.

tempt to perpetrate, any . . . robbery . . . is murder in the first degree," etc.

With these established rules of procedure and substantive law in mind, we may now direct our attention to the first count of the indictment before us. Without doubt, it was intended to be framed under Code, section 4728. Indeed, this is the position taken in argument by counsel for the State. And the precise question is: Do the allegations found in the body of the count amount to a charge of murder committed under circumstances as in the statute specified? True, it is stated in the caption and in the closing words of the count that at a time and place named the accused committed the crime of murder; but this is no more than a statement of a conclusion by the pleader. As we have seen, we must go to the body of the indictment to ascertain what crime, if any, is alleged to have been committed. What, then, is the charge here presented? Summarized, the fact statement is this: That the accused did willfully, etc., with intent and purpose of committing robbery, loosen and displace the rails of the railroad, for the purpose of wrecking a train, and that a train was wrecked in consequence. Following this, and without words expressly or impliedly indicating relation or connection, is the simple statement that a person named was fatally injured, and that he died from his injuries. Within our understanding, this is no more than to accuse the defendant of wrecking a train with intent to rob. No act is charged to have been done by him except to misplace the rails, and it would be against reason, as it would be without authority, to give force to the bald and unrelated statement that a person was injured and died as sufficient to a complete charge of murder. At best, the statement goes no farther than to allege that a human being came to his death. Whether directly or remotely is left to implication, and this we are forbidden to indulge in. Moreover, not every killing of a human being is murder. And it will be observed that the declaration of

*7. SAME: murder in attempted robbery.*

the section of the statute — which is purely definitive in character — is that all murder which is committed in the perpetration, etc., is murder in the first degree. The element of robbery is of no significance except in fixing the degree of a murder charged by proper fact averments to have been committed. Considering, then, that an indictment for murder must contain a completed statement of all the facts necessary to constitute the offense — and this is fundamental doctrine — the material deficiency in the averments of the present indictment seems to us to be fully apparent. Instead of a charge of facts constituting murder, attended by an allegation of an attempt to perpetrate a robbery in which attempt the murder was done, we have a charge in direct language of a train wrecking with intent to rob, and this is attended only by an unconnected statement that a person named suffered an injury, etc. Without further discussion, we conclude that, as the first count of the indictment does not contain a charge of murder, the motion of defendant should have been sustained.

IV.  The theory that the first count of the indictment charged murder was carried along and embodied in several of the instructions given to the jury. The error thereof is sufficiently indicated in what we have said in the foregoing division of this opinion, and we shall not stop for further discussion. Some complaints respecting other of the instructions are made, and of these we do not feel called to notice but two. In defining murder, the court told the jury that malice aforethought was an essential element in the crime. The expression "malice aforethought" was nowhere defined or explained, although in using the expression in subsequent instructions it was spoken of as having been "defined herein." We do not need to go so far as to say that the omission would have been fatal. In such a case as this record discloses, however, a comprehensive definition was not only proper, but important to a fair understanding on the part of the jury.

8.. Instructions: malice aforethought: definition.

A defense principally relied upon in the case was insanity, and as related to that subject the court gave the following, among other, instructions: " Certain physicians were permitted to testify in behalf of the State as non-experts. They gave their opinions as to the mental soundness or unsoundness of the defendant from observation and without having any communication with the defendant. They gave their opinions as to whether he was, or was not, assuming or shamming in his conduct during the trial. You will carefully examine the evidence as to the extent of the observations upon which said opinions are based. The value of these opinions must depend upon the extent, care, and thoroughness with which the observations were made. So you will carefully consider said testimony in the light of this instruction, and give it such weight as you deem it justly entitled to."

*9. NONEXPERT EVIDENCE: sanity.*

An inspection of the record discloses that evidence of the character referred to in the instruction was introduced by the State over the objections of defendant. We think the contention for error must be sustained. We may concede value to opinion evidence as related to mental soundness or unsoundness of an accused person on trial; proper foundation being first laid. But there is neither reason nor authority for saying that it is competent for the State to call non-expert witnesses from the bystanders to express their judgment, founded alone, on observations made during the trial, of the conduct of the accused — whether or not in his expression of face, and movement of the body he was feigning or assuming a part he did not feel. Moreover, if matters inhering in the personal appearance and actions of an accused person as he sits in the chair placed for him by the sheriff, or as he walks into and from the courtroom, could by any possibility become material matter to be considered by the jury in determining upon his guilt or innocence, the jurors themselves are as competent to judge as could be any non-expert witness, and it would be their exclusive province to judge.

It appears that in the course of the trial a paper purporting to be a written confession made and signed by the accused was produced by the State, and, after some preliminary evidence as to the circumstances of the
10. CONFESSIONS.    making thereof, was introduced and received in evidence over the objections of the defendant. In the course of the charge the jury was told that the statement was admissible if the free and voluntary act of the defendant. " But if procured or signed under circumstances indicating that it was the result of coercion, duress, inducement, or promise, it is not admissible. So before considering said purported confession you will fully consider the circumstances under which it was signed; and . . . if signed by reason of any inducement, etc., then you will not consider the same for any purpose. But if . . . said confession was free, etc., then you will consider the same and give it such weight and credit as you deem it justly entitled to." The defendant does not question the law of this instruction, and we may add that it accords with recent pronouncements made by this court. *State v. Storms,* 113 Iowa, 391; *State v. Wescott,* 130 Iowa, 1. It is the contention that, as it had been established by the preliminary evidence introduced, and without conflict, that the confession was made under a promise of immunity, such confession should not therefore have been allowed to go to the jury, and hence the giving of the instruction was without warrant. It will be sufficient to say that we do not so understand the record. The writing recites that: " I am doing this of my own free will, without fear, intimidation, promise, or threats whatsoever." Without setting out the preliminary evidence brought out on the trial, it is sufficient for present purposes to say that the court rightly concluded that the effect thereof went no farther than to make a question proper to be submitted to the jury.

No other matters appear which seem to require discussion in view of the disposition of the case we feel called upon to make.

For the reasons pointed out, the judgment is *reversed,* and a new trial awarded.