STATE of Iowa, Appellee,

v.

**Teddy LeRoy COWMAN and Marvel Viola Cowman, Appellants.**

**No. 244.**

Supreme Court of Iowa.

Nov. 14, 1973.

Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellants.

Richard C. Turner, Atty. Gen., Raymond W. Sullins, Asst. Atty. Gen., and Coral F. Greenfield, County Atty., for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REES and REYNOLDSON, JJ.

REYNOLDSON, Justice.

Each of the defendants (mother and son) were indicted for the crime of arson of a dwelling house in violation of § 707.1, The Code, 1971. Following convictions, the jointly-tried cases were consolidated for appeal. We hold these cases must be reversed.

Defendants argue the following errors occurred below: Trial court refused to grant defendants' motion for continuance, failed to inform defendants or their counsel of a juror's consultation with the court concerning her bias or prejudice, and overruled defendants' motion for new trial despite these errors and despite insufficient evidence to support conviction of either defendant.

I. *Sufficiency of evidence.*

■ This point was neither raised by defendants in motion for directed verdict at the close of all evidence nor in motion for a new trial. Thus this challenge could be deemed waived. State v. Tokatlian, 203 N.W.2d 116 (Iowa 1972). Nonetheless, we have reviewed the record carefully in light of § 793.18, The Code.

■ On defendants' appeal from criminal conviction based on jury verdict challenging sufficiency of evidence to sustain the verdict, the evidence is viewed in the light most favorable to the State and we accept as established all reasonable inferences tending to support the jury's action. State v. Reeves, 209 N.W.2d 18 (Iowa

1973) ; State v. Schurman, 205 N.W.2d 732 (Iowa 1973).

It is conceded the burning of defendant Marvel Viola Cowman's house was arson. A compilation of the evidence connecting each defendant with the crime would serve no useful purpose. Facts established by the State's evidence and permissible inferences to be drawn therefrom adequately support the jury's verdicts.

II. *Motion for continuance.*

Section 780.2, The Code, makes the Rules of Civil Procedure applicable to continuances in criminal cases. Pertinent here is R.C.P. 183, entitled "Causes for Continuance."

September 28, 1971, seven days before trial, the State served notice of additional testimony of a witness, John Rote. Rote was to testify (and later did so testify) that defendant Teddy LeRoy Cowman told him he, Cowman, had started the fire with fuel oil when some people he had contacted to burn the house failed to appear. According to Rote this conversation occurred in Stuart, Iowa, a few days after the fire.

September 30, 1971, defendants filed multiple motions, including a motion for continuance. The latter motion was grounded upon the necessity to obtain, by deposition or interrogatories, the testimony of James Stewart, then in the armed services at Fort Bragg, North Carolina. It was alleged Stewart would testify he was present at the Cowman-Rote conversation and Cowman had said "somebody had taken fuel oil and spread it around the house but that he didn't know who did it." There was no supporting affidavit of the defendants or their attorney. This motion was orally amended and renewed when trial commenced. At that time defendant's counsel stated he had telephoned Stewart at Fort Bragg and the latter had stated he was in the company of Cowman when he talked to Rote and there was no mention of the fire.

The motion for continuance was overruled. Trial court's alleged error in this respect was raised by motion for new trial. Attached to the latter motion was the affidavit of James Stewart stating he was present at a conversation between Cowman and Rote on July 17, 1971, and although the fire was mentioned, Cowman never said he had started it.

We have said granting or refusing a motion for continuance rests largely on the sound discretion of the trial court and such discretion is very broad. State v. Williams, 207 N.W.2d 98 (Iowa 1973); State v. Weiland, 202 N.W.2d 67 (Iowa 1972). Only where there is an abuse of judicial discretion will this court interfere with the action of the trial court in passing upon a motion for continuance. State v. Sipe, 240 Iowa 872, 37 N.W.2d 914 (1949).

At the threshold of trial most lawyers (if not litigants) probably have misgivings relating to an "absence of evidence" on some point at issue. Apparently rule 183(b) was designed to restrain trial delays resulting from zero-hour motions for continuance. To this end, the rule provides, "All such motions based on absence of evidence *must* be supported by affidavit of the party, his agent or attorney * * *." The motion *"must"* contain the factual allegations specified in the rule. Compliance with such provisions provides trial court with some basis for sifting meritorious motions from those motions merely motivated by a desire to delay or a forlorn hope evidence will ultimately materialize. The required affidavit from the litigant or attorney not only furnishes evidence to sustain the motion, but indicates good faith.

In the case before us the motion for continuance was unsupported by affidavit. . It did not contain all of the factual allegations required by the rule. We need not speculate whether, in view of the State's notice of Rote's anticipated testimony and the limited time available to defendants, trial court could have sustained the motion within the permissible limits of its broad discretion. Here trial court, confronted with a motion which violated the rule in several basic particulars, overruled it. We cannot say the discretion thus exercised was abused. Our holding is supported by State v. McClain, 256 Iowa 175, 125 N.W.2d 764 (1964) and State v. Sieren, 253 Iowa 118, 111 N.W.2d 249 (1961).

In overruling the continuance motion trial court noted Stewart was beyond the court's jurisdiction and could not be compelled to attend trial. The fact a witness is not subject to subpoena, standing alone, is no ground for refusing a continuance. See State v. Von Kutzleben, 136 Iowa 89, 113 N.W. 484 (1907). A defendant in a criminal action may depose witnesses on notice or commission in the same manner as in civil cases. Section 781.10, The Code. Upon retrial this issue doubtlessly will resolve itself.

III. *Trial court communication with juror.*

A second ground for the new trial motion related to alleged juror misconduct, and a communication between trial court and the juror without defendants' knowledge. It was alleged a female juror, after the evidence was closed but before submission, determined defendant Teddy LeRoy Cowman had given her husband a $50 insufficient fund check. Defendants alleged this juror talked to two bankers and an attorney regarding the check, exhibiting concern, and was prejudiced and biased. These allegations were partially supported by an affidavit of a banker's wife who was present when the juror consulted her husband in their home. This affiant stated the juror was "upset" and the banker advised her to report to the judge "and advise him of the possible bias or prejudice she might have and see if she should disqualify herself as a juror * * *."

Defendants variously claimed they should have been permitted to challenge or otherwise remove the juror from the trial,

the juror's conduct fell within those grounds for new trial set out in § 787.3(2) and (3), The Code, and they were deprived of a fair trial.

The only record before us concerning the resulting juror-judge conference is trial court's recollection contained in his comments in overruling the motion for new trial. The court stated the juror,

"* * * during the progress of the trial * * * came to the Court and advised the Court that during the voir dire examination * * * she had said that she knew neither of these defendants, and that it had now come to her attention that in her husband's business they had received a check from Teddy Cowman in the amount of $50.00 which check was returned * * * because of insufficient funds or no account, the Court doesn't recall exactly what the circumstances were, but anyway the check had been returned, and she was making inquiry as to whether or not this Teddy Cowman was the same person as the defendant, and she then came to the Court and advised the Court that she wanted the Court to know that even though she didn't know Teddy Cowman this information had now come to her attention.

"The Court did not contact counsel either for the State or the defendants, but the Court did confer with Mrs. Avey and the Court specifically asked Mrs. Avey if the fact that this did occur in her husband's business * * * [W]hether that in any way would cause any prejudice or bias or antagonistic feelings on the part of this juror against the defendant Teddy LeRoy Cowman, and Mrs. Avey assured the Court in no way would this affect or influence her verdict in this case.

"The Court did not feel that this was sufficient information that would require the Court to report this to counsel, although the Court will concede at this time that it probably would have been a better procedure to have called counsel

in and let them make any record they cared to at that time. The Court is, however, confident that had this occurred the same thing would have happened, there would have been no indication on the part of Mrs. Avey that she had any prejudice or had feelings, that this would not in any way affect her verdict, and that the trial would have proceeded just as it did in the initial state."

On appeal, defendants contend the above private conversation also violated § 777.19, The Code, which requires defendant's presence at a felony trial. See State v. Register, 253 Iowa 495, 112 N.W.2d 648 (1962); State v. Wilcoxen, 200 Iowa 1250, 206 N. W. 260 (1925). The State argues violation of this section was never urged below. We need not determine whether the issues raised by defendants in district court were broad enough to encompass this alleged error, for the outcome of the appeal is mandated by another long-standing rule.

■ We start with the observation we have heretofore made, that private conversations between the trial court and jurors are universally condemned. State v. Grady, 183 N.W.2d 707 (Iowa 1971); State v. Register, supra, see 53 Am.Jur., Trial § 904, pp. 649–51. Especially is this true following submission of the cause to the jury:

"It has been said the deliberation of the jury is a final and crucial stage of any trial. In order that the institution of jury trials be preserved and its usefulness continued, its deliberations and pronouncements must be kept pure, and untainted, not only from all improper influences, but from the appearances thereof. It is often said that the jury trial is one of the bulwarks of our liberty, but it will remain so only as long as public' confidence in the institution prevails."

—Daniels v. Bloomquist, 258 Iowa 301, 138 N.W.2d 868, 872 (1965).

Perhaps the exigencies of the trial situation require a greater tolerance in the pre-

submission stage. All who have spent time in the trial courtroom know of the juror who seeks to inform the court of a physical ailment which might cause him to hurriedly depart the jury box. Those communications, having to do solely with the physical condition of a juror, or of the illness or death of a juror's relative, or other subjects unrelated to trial, will cause no controversy if the court indicates the substance of such communications to all counsel.

But a different set of circumstances is presented here. This juror in the course of trial made inquiries in the community to determine whether a defendant in the cause had given her husband a bad check. Having confirmed that, she talked to the trial judge at some length on a point which went to the most fundamental aspect of fair trial—her ability to serve as an unbiased and impartial juror.

In State v. Bruno, 204 N.W.2d 879, 885 (Iowa 1973) we quoted pertinently from a prior decision:

"This appropriate language appears in State v. Carey, 165 N.W.2d 27, 29 (Iowa 1969):

'* * * We have consistently held misconduct with respect to the jury, whether it be by litigant, counsel or officer of the court, will not be grounds for a new trial unless prejudice is shown, * * * [citing authorities].

'We are, however, confronted with another equally well-established rule in considering this error—that the jury is to be above suspicion and that any practice which brings its proceedings under suspicion is to be prohibited.'"

In Daniels v. Bloomquist, 258 Iowa 301, 138 N.W.2d 868 (1965) we said the mere appearance of conduct which would not meet with the approval of public opinion and would therefore undermine the judicial system must be severely condemned.

To the same effect is a quotation from Lynch v. Kleindolph, 204 Iowa 762, 764, 216 N.W. 2, 3 (1927) which appears in State v. Carey, supra, 165 N.W.2d at 29:

"When the time comes that our people lose faith in the courts, our form of government is fast nearing its end. * * * That faith can only be sustained by keeping our judicial proceedings not only free from wrong, but free from all suspicion of wrong."

So the issue before us is not resolved by surmising the juror's out-of-court investigations were motivated by her good-faith concern over her voir dire responses, which may well be the case; nor by our sure knowledge the conscientious trial judge acted from the best of motives in a relatively uncharted area. It may be conceded defendants have been unable to show prejudice in view ¯of the unsatisfactory record before us.

▮ The point remains the community must be aware a juror conducted investigations during a trial to confirm that a defendant in the case gave her husband a bad check. The convicted defendants know this juror during trial had a private consultation with the judge touching upon her fitness to serve as a fair juror, all without the knowledge of defendants or their counsel. In these circumstances, the rule last above articulated applies. This unfortunate chain of events requires us to remand these cases for new trial.

Our holding is not to be interpreted to mean a judge may never, during trial, have a conversation with a juror. Such communication may be unavoidable in certain contingencies. The statutory admonition given the jurors requires them to report to the court any outside attempts to communicate with them concerning any subject connected with the trial. Sections 780.21, 780.22, The Code.

▮ But in these situations the court should require the reporter to take down the conversation. If this is in the absence of counsel, trial court should at once cause the record to be read to counsel to afford

an opportunity to make any record deemed necessary. In a proper case, such as this, counsel should be permitted to examine the juror to develop grounds for motion for mistrial or other proposed relief. Only through such a record is it possible for this court to review trial court's exercise of discretion in the matter.

Such a procedure, inferentially or directly, appears to be that adopted by most trial courts in the limited number of cases involving pre-submission juror-judge communications. See United States v. Jorgenson, 451 F.2d 516 (10 Cir. 1971), cert. denied, 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793 (1972) ; Washington Times Co. v. Bonner, 66 App.D.C. 280, 86 F.2d 836 (1936) ; People v. Fiore, 176 Cal.App.2d 536, 1 Cal. Rptr. 351 (1959) ; Harris v. Commonwealth, 411 S.W.2d 924 (Ky.1967) ; State v. Lupino, 268 Minn. 344, 129 N.W.2d 294 (1964), cert. denied, 379 U.S. 978, 85 S.Ct. 681, 13 L.Ed.2d 569 (1965). A Nevada decision, Tomlin v. State, 81 Nev. 620, 407 P.2d 1020 (1965), cert. denied, 384 U.S. 990, 86 S.Ct. 1894, 16 L.Ed.2d 1006 (1966) does not disclose whether the juror-judge consultation was reported. In Berness v. State, 263 Ala. 641, 83 So.2d 613 (1955) a factual recital, as here, was found in trial court's ruling on motion for new trial. The Alabama Supreme Court affirmed an appeal court's judgment reversing the felony case because defendant was not present during the conversations between certain jurors and the judge. See generally, Annot., 41 A.L.R.2d 227, 266–75 (1955, Later Case Service, 1969, Supp. 1973).

### IV. *Motion for new trial.*

We have already considered specific complaints subsumed under defendants' general assignment of trial court error in failing to grant their new trial motion. The motion should have been granted, for the reasons set out in division III.

Reversed.

RAWLINGS, LeGRAND and REES, JJ., concur.

MOORE, C. J., dissents as to Division III and the result.