**STATE of Iowa, Appellee,**

v.

**Russell Dean BOYKEN, Appellant.**

**No. 55686.**

Supreme Court of Iowa.

April 24, 1974.

John C. Platt, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., Robert Jacobson, Asst. Atty. Gen., and Steven S. Hoth, Asst. Co. Atty., for appellee.

Submitted to MOORE, C. J., and MASON, LeGRAND, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

This defendant was convicted of the crime of larceny of property exceeding $20 in value. See §§ 709.1, 709.2, The Code. Following his sentence to serve not to exceed five years in the Ft. Madison penitentiary, he appeals. We reverse the judgment.

Defendant was observed while taking 31 records from the shelf of the J. C. Penney store in Burlington. He placed them un-

der his coat and hurried from the building. Store employees who pursued defendant stopped him on the street and he was ultimately arrested and brought to trial.

At trial defendant rested at the close of State's evidence. On appeal he raised two issues for reversal.

I. *Instruction on burden of proof.* In instruction five trial court told the jury:

"The burden is on the State to prove the defendant guilty beyond a reasonable doubt.

"A 'reasonable doubt' is such a doubt as fairly and naturally arises in your mind and by reason of which you cannot say that you have a full and abiding conviction of the guilt of the defendant; and if, after considering all of the circumstances as disclosed by the evidence, you find your mind wavering or vacillating, then you have a reasonable doubt, and the defendant is entitled to the benefit of such doubt and you must acquit him. A reasonable doubt may arise from the evidence in the case or it may arise from a lack or failure of evidence, and it must be such a doubt as would cause a reasonable, prudent and considerate man to pause and hesitate before acting in the graver and more important affairs of life. But you should not ignore credible evidence to hunt for doubt, and you should not entertain such doubt as is purely imaginary or fanciful or based on groundless conjecture. If, after a careful and impartial consideration of all of the evidence in the case, you have a full and abiding conviction of the guilt of the defendant, then you are satisfied beyond a reasonable doubt, otherwise you are not satisfied beyond a reasonable doubt."

Defendant contends this instruction was fatally defective because trial court failed to limit the instruction by telling the jury to consider only the lack or failure of evidence produced by the State. Defendant argues the jury, following this instruction,

could have impermissibly considered lack of evidence on the part of defendant; and further, the instruction amounted to a prejudicial reference to defendant's failure to testify and present evidence in his own behalf.

■ Defendant's trial objection to the instruction was "on the basis it violates the defendant's right to be presumed innocent of the crime, and makes it appear to the jury that the burden is on the defendant to show a reasonable doubt and to produce a reasonable doubt before he would be entitled to an acquittal." We believe the exception made was sufficiently clear to alert trial court to the alleged error.

In State v. Stout, 247 Iowa 453, 74 N. W.2d 208 (1956) this court had before it an instruction which permitted the jury to consider "the facts as the same have been established by the proof, together with the lack of testimony * * *." The defendant's conviction was affirmed only because other instructions clearly directed the jury to consider only lack of evidence on the part of the State. But in *Stout* the court plainly indicated instructions should not suggest the jury might consider as relevant any lack of testimony or evidence on defendant's part.

■ More recently, in State v. McGranahan, 206 N.W.2d 88, 92 (Iowa 1973), we stated an instruction on reasonable doubt should limit such reference to a lack or failure of evidence *produced by the State*. Following McGranahan, the Iowa State Bar Association amended its uniform instruction 501.11 (reasonable doubt) to add the essential clause. Unfortunately this case was tried before the *McGranahan* decision, and the uncorrected version of instruction 501.11 was submitted by trial court. This error requires a reversal.

■ Defendant also argues trial court's definitions of reasonable doubt otherwise confused the jury and violated defendant's right to a presumption of innocence. He cites three Illinois cases holding it reversi-

ble error for the court to define "reasonable doubt." People v. Glispie, 1 Ill.App.3d 859, 275 N.E.2d 188 (1971); People v. Cagle, 41 Ill.2d 528, 244 N.E.2d 200 (1969); People v. Johnson, 317 Ill. 430, 148 N.E. 255 (1925). The Illinois rule does not prevail in this state. See State v. McGranahan, supra.

As the case must be retried, we move to a consideration of defendant's second ground for reversal.

II. *Evidence of value of property stolen.* Defendant asserts there was insufficient foundation laid to show the value of the stolen goods as fixed by State's witness was the "general market value."

State produced witness Robert F. Milleville, a 20-year employee of J. C. Penney Company and manager of the store. He was familiar with the purchase and sale of records. He produced a list of the cost and retail sales prices of the stolen records. Trial court sustained objections to questions seeking to elicit his testimony of the wholesale and retail prices. Milleville testified he did comparative shopping and knew the prices charged for such merchandise in other stores.

Responding to defense counsel's voir dire question, this witness said he did not know what records sold for "between individuals on a personal basis on the open market." Trial court overruled the objection the witness was not qualified, had no knowledge "what these records sell for on the open market, or what the fair market value of these records are." Milleville was permitted to express his opinion as to the "fair market value or general market value" of the records and responded with the sum of $141.09. Upon cross-examination he testified this was the retail value of the merchandise.

■ Section 709.2, The Code, makes reference only to the "value" of the property stolen. Ordinarily the criterion of value is the market value of the stolen property at the time and place of the theft. 3 H. Underhill, Criminal Evidence § 603, p. 1474 (5th ed. 1957); 2 F. Wharton, Criminal Law and Procedure § 449, p. 73 (1957). Where property stolen has no market value, the issue becomes its actual value. McMahon v. City of Dubuque, 107 Iowa 62, 65, 77 N.W. 517 (1898); State v. McDermet, 138 Iowa 86, 88, 115 N.W. 884, 885 (1908).

■ In distinguishing between grand and petit larceny where the classification rests on value, the rules which establish value in civil cases generally apply. State v. Carroll, 186 Neb. 148, 150, 181 N.W.2d 436, 437 (1970); 50 Am.Jur.2d Larceny § 45, pp. 209–12; 52A C.J.S. Larceny § 118, pp. 617–620.

■ As in a civil suit, an owner is competent to testify concerning the value of his property. State v. Register, 253 Iowa 495, 499, 112 N.W.2d 648, 650 (1962); State v. Brightman, 252 Iowa 1278, 1287, 110 N.W.2d 315, 320 (1961). Where the owner is a private corporation, a managing officer may testify if, as here, it is further shown he has knowledge of such value as qualifies him in fact. Appeal of Dubuque-Wisconsin Bridge Co., 237 Iowa 1314, 1320, 25 N.W.2d 327, 330 (1946). We have said the retail price of new merchandise stolen is admissible as bearing on its fair market value. State v. Long, 256 Iowa 1304, 1310, 130 N.W.2d 663, 666 (1964).

In cases involving theft of new merchandise, other jurisdictions have held market value may be established by evidence of wholesale or retail values, or both. Where both establish grand larceny, it is immaterial whether computation of market value is by reference to one or the other. State v. Sorrell, 95 Ariz. 220, 224, 388 P.2d 429, 431–432 (1964); People v. Lizarraga, 122 Cal.App.2d 436, 437, 264 P.2d 953, 954 (1954); State v. Carroll, supra, 186 Neb. at 150, 181 N.W.2d at 437–438. See Maisel v. People, 166 Colo. 161, 164–165, 442 P.2d

399, 401 (1968); People v. Evans, 23 Ill.2d 302, 304–305, 178 N.E.2d 376, 377 (1961); State v. Milano, 94 N.J.Super. 337, 340, 228 A.2d 347, 348 (1967).

 Following these rules, we hold Milleville was competent to testify concerning the market value of the stolen records. Both the wholesale and retail values were relevant evidence. This store manager's lack of knowledge of the market value of such records between individuals on the street (assuming there was such a market) would not render him incompetent to testify to the market value of these new records on the shelves from which they were stolen.

Finally, we deem it significant that both the defense counsel and prosecutor agreed on the value instruction given by trial court in this case. It turned on "fair market value" and defined it as not necessarily the retail or wholesale value, but what a willing buyer would pay a willing seller in the open market place. The jury was told retail price might be evidence of fair market value.

In State v. Lewis, 144 Iowa 483, 485, 123 N.W. 168, 169 (1909) the court approved an instruction requiring the jury to find the "fair market value" of the property at the time it was taken. A similar reference to "fair market value" is found in State v. Long, supra, 256 Iowa at 1309, 130 N.W.2d at 666. See Sartin v. State, 44 Wis.2d 138, 148–151, 170 N.W.2d 727, 732–733 (1969).

Apparently the clause "general market value" first appeared in an Iowa decision in State v. Lewis, supra, 144 Iowa at 485, 123 N.W. at 169, and was adopted in State v. Hardesty, 261 Iowa 382, 391, 153 N.W. 2d 464, 470 (1967). Nothing in either case indicates the court intended the word "general" to have any significance other than to emphasize market value was not to be determined subjectively by considering the property's worth to any particular person, but rather was to be objectively determined. See 50 Am.Jur.2d, Larceny § 45,

pp. 209–12; 52A C.J.S. Larceny § 118, pp. 617–620. Defendant's suggestions that "general market value" has some esoteric meaning not recognized by trial court are without merit.

Sufficient foundation was laid for admission of all value evidence introduced at trial. Defendant's objections below were rightly overruled.

However, for reasons assigned in division I, this case must be reversed.

Reversed.