STATE of Iowa, Appellee,

v.

Wayne Edward MILLER, Appellant.

No. 57203.

Supreme Court of Iowa.

May 21, 1975.

Klockau, McCarthy, Lousberg, Ellison & Rinden, Rock Island, Ill., for appellant.

Richard C. Turner, Atty. Gen., Raymond Sullins, Jim P. Robbins, Asst. Attys. Gen., Edward N. Wehr, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, REYNOLDSON and HARRIS, JJ.

MASON, Justice.

Wayne Edward Miller was charged January 22, 1974, by county attorney's informa-

tion with the crime of shoplifting property valued at over twenty dollars in violation of section 709.20, The Code. February 4, 1974, Miller was found guilty and was sentenced to a term of five years in the Iowa State Penitentiary at Fort Madison. He appeals from judgment imposing such sentence.

September 13, 1973, at approximately 6:00 p. m. Miller was seen loading cartons of cigarettes into a grocery cart at the National Tea food store in Davenport. Manager Robert White called the Davenport Police and then observed defendant leave the store without first paying for the cigarettes.

White followed defendant outside and asked him for a receipt, to which defendant replied he did not have one. Sometime later defendant produced a receipt for 33 cents, dated September 4, 1973, from the grocery sack. During trial, a second receipt dated September 14 was produced which showed ten items with identical prices to the ten cartons of cigarettes found in the grocery bag.

White admitted it was possible a person could get a receipt dated for a following day, but explained the store's cash registers were checked out after 6:30 p. m. each evening, thus making it impossible for defendant to have received such a slip as he had already been apprehended by the police at this time. On rebuttal, Mary Grogan, cashier at the National Tea Store, testified over objection as to the cash register checkout procedure.

Mr. White accompanied defendant to the police station. While in the squad car, White asked defendant if he had paid for the cigarettes and defendant answered he had not.

Nixon Sabin of the Davenport Police Department, the arresting officer, took defendant to the police station, searched him and put the grocery sack and ten cartons of cigarettes in the evidence locker. Sabin testified, over objection, he had asked defendant if he had taken the items. Miller answered, "I guess so."

Defendant himself took the stand, admitted to four separate prior felony convictions and to being in the National Tea Store September 13, 1973, but stated he purchased the cigarettes. After making the purchase, defendant claimed he came back inside to get some "cardboard flats." When he left again, he was apprehended by Mr. White and subsequently arrested. Upon returning home later that evening, defendant discovered the second sales slip in an article of his clothing.

Defendant further stated his purpose for being in the store was to purchase cigarettes for the Veterans Hospital in Iowa City. After resting his case, defendant moved to reopen and for a continuance in order to call as a witness Mrs. Ryan, a nurse at the hospital, to corroborate the contention defendant had delivered two cases of cigarettes to the hospital October 4, 1973. The necessity of presenting this testimony had somehow taken counsel by surprise. The trial court held such evidence immaterial and denied the motion.

Other facts will be narrated as they bear upon the issues discussed herein.

Defendant in seeking reversal asserts the trial court erred: (1) in giving instruction 5 which permitted the jury to consider a lack or failure of evidence on the part of defendant; (2) in allowing evidence of defendant's past felony record when such record did not involve truth and veracity and was over ten years old; (3) in allowing Mary Grogan to testify as a rebuttal witness as to facts first brought out by the State; (4) in allowing Nixon Sabin to testify, beyond the minutes of his testimony, that defendant had confessed to the crime; and (5) in overruling defendant's motion to reopen and for a continuance to secure a witness. These contentions give rise to the issues presented for review.

■ I. Defendant insists instruction 5 bearing upon reasonable doubt was erroneous. The challenged instruction is identical to the instruction held to be defective in

State v. Boyken, 217 N.W.2d 218 (Iowa 1974).

*Boyken* was based on an earlier case where the court stated: " * * * For the benefit of the bench and bar we note the instruction on reasonable doubt should limit its reference to the lack or failure of evidence to such a lack or failure or [sic 'of'] evidence *produced by the state.* State v. Stout, 247 Iowa 453, 74 N.W.2d 208." (Emphasis in the original) State v. McGranahan, 206 N.W.2d 88, 92 (Iowa 1973).

Defendant objected to instruction 5 for the reason, " * * * reasonable doubt is a self-defining term, and for the Court to attempt to instruct on reasonable doubt would just confuse the jury." Defendant admits this is a different ground from that urged on appeal. And, in this regard "[o]bjections to instructions must be sufficiently specific to alert trial court to any alleged error to be corrected." State v. Bell, 223 N.W.2d 181, 185 (Iowa 1974), citing as authority State v. Boyken, supra, 217 N.W.2d at 219 and State v. Hraha, 193 N.W.2d 484, 486 (Iowa 1972).

Defendant contends this court should decide the case on the merits under section 793.18, The Code, notwithstanding his failure to properly object. This section provides:

"Decision of [the] supreme court. If the appeal is taken by the defendant, the supreme court must examine the record, without regard to technical errors or defects which do not affect the substantial rights of the parties, and render such judgment on the record as the law demands; it may affirm, reverse, or modify the judgment, or render such judgment as the district court should have done, or order a new trial, or reduce the punishment, but cannot increase it."

This statement from State v. Wisher, 217 N.W.2d 618, 620 (Iowa 1974), is relevant to defendant's contention:

"In regard to preservation of error and review under section 793.18, State v. Galvan, 181 N.W.2d 147, 149 (Iowa 1970), has

this statement: ' * * * However, the statutory duty of the Supreme Court under section 793.18 of the Code to review the record in a criminal case without regard to technical errors or defects does not apply where proper or timely objections were not made.'

"The same principle is repeated in somewhat different words in State v. Thomas, 190 N.W.2d 463, 465 (Iowa 1971), in this manner: 'Our statutory duty to review the record without regard to technical errors or defects which do not affect substantial rights of parties (§ 793.18, Code, 1971) does not mandate a reversal where errors asserted below are not raised on appeal or where proper objections were not made below to errors assigned in this court. * * * [citing authorities].' See also State v. Slater, 261 Iowa 554, 559, 153 N.W.2d 702, 705, where several of our decisions announcing this principle are cited."

In State v. Bell, 223 N.W.2d at 185, this court dealt with a defendant's failure to urge an adequate objection to an identical reasonable doubt instruction and refused to reverse because defendant's objection failed to alert the trial court to the purported defect which he asserted on appeal to this court. See State v. Baskin, 220 N.W.2d 882, 886 (Iowa 1974). The court declined to consider the contention under section 793.-18.

In view of the statement quoted earlier in this division from State v. McGranahan defendant's failure to specifically object to the instruction cannot be considered a technical error.

The contention presents nothing for review in this court.

■ II. It is argued reversible error was committed when the trial court allowed evidence of defendant's prior felony convictions to be admitted when those convictions did not involve truth and veracity and three of the four were over ten years old.

While the record is somewhat confusing on this point, it appears defendant pleaded guilty to three crimes in 1963—twice to larceny in the nighttime and once to larceny of property valued in excess of twenty dollars. Again, in 1971, a guilty plea was entered for the crime of shoplifting larceny of property valued at over twenty dollars.

The opening statements to the jury were taken and a transcript of those statements is included in the trial transcript certified to this court. It discloses that in the course of his opening statement defense counsel said, " * * * I want to point out one thing also, by the way, that my client is a convicted felon, he had been convicted of a felony. He has paid his debt to society." After the State introduced its evidence in chief and rested, defendant moved for a directed verdict or in the alternative for a mistrial. After the motion was overruled and before introducing any evidence for the defense, defense counsel made a motion in limine regarding the right of the State to cross-examine defendant concerning prior felony convictions.

The pertinent portion of the record on those proceedings follows:

"MR. WALLACE: Judge, at this time I wish to advise the Court that my client wishes to take the stand and testify in his behalf; is that correct?

"DEFENDANT: Right, your Honor.

"MR. WALLACE: And in regard to this, I am going to make a motion in limiting [sic] relative to what the State can ask the defendant as to prior convictions. One, for the record, I would submit that the State should only be allowed to ask if he has a felony record, period.

"THE COURT: No, they can go one step further, can ask how many felonies he has been convicted of, that is Supreme Court, that is all he can ask him.

"MR. WALLACE: On that point, then I would further request that for the State to ask how many felony convictions would be a denial of my client's constitutional rights under the due process clause of the Federal constitution, and a denial of my client's rights under the Iowa State constitution.

"THE COURT: Okay.

"MR. WALLACE: My basis for that is that, one, the convictions, prior convictions of the defendant are dated back in 1963. Two of his convictions are back in 1963. Now, the purpose of a showing prior convictions is to use it solely for the purposes of impeachment and no other purpose.

"THE COURT: That's right.

"MR. WALLACE: Now, using an old record, 1963, would be a highly prejudice to my client, in using a 1963 conviction, and this would be not used solely for the purpose of impeachment, but rather to prejudicial the jurors relative to my client's case. If the Court will remember, in opening statement, I advised the jurors that the defendant had a felony convictions, or conviction, I should say. I don't know the exact verbiage that I did use, but I believe it was a conviction felon, and, certainly, to state the number of times that the defendant has been convicted would not be proper. This would be highly improper as it would be a denial of due process. The previous convictions further do not relate to truth and veracity. In the present case, my client is charged with shoplifting, and, accordingly, the previous convictions do not relate to truth and veracity; because of the fact that these are old convictions, I feel that they should not be, the number of convictions should not be asked of the defendant.

"THE COURT: Well, the Supreme Court has held in State v. Houston case [261 Iowa 1369, 1372–1373, 158 N.W.2d 158, 160–161]. All I will allow the County Attorney to ask him is how many convictions, felony convictions he got, period, that's all. You can't go into subject matter of what they were, understand.

"MR. SCHEBLER: Right.

"THE COURT: That's what he is limited to.

"MR. WALLACE: All right. In 1963, that the defendant pled guilty to larceny in the nighttime and larceny of property, value in excess of $20.00, and then in 1963 also larceny in the nighttime he pled, that was a conviction.

"MR. SCHEBLER: Right, that was a conviction. I don't remember if he pled guilty or not on the third one.

"MR. WALLACE: Did you plead guilty to that?

"DEFENDANT: To which?

"MR. SCHEBLER: One up in Clinton County?

"MR. WALLACE: Was that a conviction or plea?

"DEFENDANT: Pled guilty to that, sentenced me to ten years.

"MR. WALLACE: In other words, all of your previous convictions were pleas of guilty; is that right?

"DEFENDANT: Right."

Due to the uncertainty which existed by reason of statements made in some of our earlier cases considering the proper procedure to be followed in preserving for review any alleged error in rulings on such motions, we discussed the problem at some length in Twyford v. Weber, 220 N.W.2d 919, 922–924 (Iowa 1974). We quote from that decision:

"A motion in limine has been defined as 'a term used to describe a written motion which is usually made before or after the beginning of a jury trial for a protective order against prejudicial questions and statements.' * * * [citing authority].

"* * *

"The function of a motion in limine is not only to exclude during the voir dire examination and opening statements, reference to anticipated evidence claimed to be objectionable because incompetent, irrelevant, immaterial or privileged but to also restrict opposing counsel in asking questions or making statements in offering such matters until the admissibility of the questionable evidence can be determined during the course of the trial by presenting to the court in the absence of the jury such evidence by offer and objection. Its objective is to control such matters in advance and thus avoid disclosing to the jury prejudicial material which may compel declaring a mistrial. * * * [citing authority].

"It serves the useful purpose of raising and pointing out before trial certain evidentiary rulings the court may be called upon to make during the course of trial. The motion has the effect of advising the court and opposing counsel of the party's position on a particular matter and should effectively remove the problem when the argument is advanced by the offending party that the prejudicial evidence came in by sheer inadvertence.

"It is not a ruling on evidence and should not, except on a clear showing, be used to reject evidence. It adds a procedural step to the offer of evidence. This type of motion should be distinguished from other types of pretrial motions or hearings such as the determination of the competency of a witness, the ability of a minor to testify, the admissibility of dying declarations, the determination of the voluntariness of a confession at an independent hearing thereon and a motion to suppress evidence by a party aggrieved by an unlawful search and seizure. In these situations the court's determination of admissibility ordinarily puts an end to the question in the trial court and controls the subsequent course of the action relative to all matters included in the ruling.

"Motions in limine may have the effect of precluding the introduction of certain evidence at trial, yet they are not the same as a motion to suppress evidence and the basis of the latter is completely different. * * [citing authority]."

In the case before us defendant's motion in limine achieved more than simply apprising the judge of future rulings he might be required to make during trial.

The trial judge stated exactly what he planned to allow in the way of admission of testimony bearing on prior felony convictions. It was certain the State would be permitted to introduce the fact defendant was a convicted felon and the number of convictions. To hold under these circumstances, as the State contends, that a prompt objection to any propounded questions relative to defendant's prior felony convictions was necessary in order to preserve error would be a useless gesture since ordinarily when a timely and proper objection has been distinctly made and overruled it need not be thereafter repeated as to the same class of evidence offered. See Solbrack v. Fosselman, 204 N.W.2d 891, 894 (Iowa 1973); State v. Miller, 204 N.W.2d 834, 841 (Iowa 1973); and authorities cited in these opinions.

■ In our opinion where a motion in limine is resolved in such a way it is beyond question whether or not the challenged evidence will be admitted during trial, there is no reason to voice objection at such time during trial. In such a situation, the decision on the motion has the effect of a ruling.

The State's contention in this respect is without merit.

However, in order to present a complete picture of the stage in which the alleged error arose it is necessary to detail further facts.

Defendant subsequently took the stand and in response to questions put by his counsel admitted pleading guilty to four prior felonies. The State points out it did not refer to these convictions on cross-examination of defendant and contends they were mentioned once in closing argument and again in rebuttal, after defense counsel had argued defendant was not guilty because on the prior four charges guilty pleas were tendered, whereas here, defendant pleaded not guilty.

During final arguments the following transpired:

"MR. SCHEBLER: * * * It is one or the other, so you can take it from there; when you consider Mr. Miller's testimony, consider the fact that he has been convicted of a felony on four prior occasions, by his own testimony; and, of course, the fact that he brought it out and not me, that shouldn't surprise you he brought it out because he knew if he didn't I would, it would look better.

"MR. WALLACE: Your Honor, I am going to object to this prejudicial argument, improper function.

"THE COURT: You can argue from the facts, infer from the facts. Go ahead.

"MR. SCHEBLER: I will be very brief here. The fact that Mr. Miller pled guilty to on prior occasions as opposed to going to trial of course, is of little relevancy, have seen that often before, too. I have got several felony convictions, so you shouldn't be bothered by that; of course, we are not dealing with a program here. This is our game of life, if you want to call it this.

"MR. SCHEBLER: * * * Now, Mr. White is either lying or he is telling the truth. Now one of the two. Again, in considering who is telling the truth and who is not telling the truth, considering the credibility of the people here, you can consider their interest in the outcome of the case among other things. You can consider the fact that we have a man that has been convicted of a felony of four prior occasions.

"MR. WALLACE: I would object to that statement, prejudicial and inflammatory."

In the face of this record defendant insists the court's ruling admitting evidence relative to defendant's four prior felony convictions violated the standards set forth in State v. Martin, 217 N.W.2d 536 (Iowa 1974), since the convictions (1) did not involve truth or veracity and (2) three of the four convictions were ten years old at the time of trial.

The State challenges this contention by pointing out the standard adopted in *Martin*

was held not to be retroactively applicable and is to be applied to cases tried before the filing of the opinion in which error has been properly preserved. *Martin* was actually filed April 24, 1974, more than two months after the trial in the present matter.

■ The *Martin* standards will not be applicable if defendant did not properly preserve error. "It is to be additionally understood the standard here adopted is not retroactively applicable. It will be applied only to (1) the present case; (2) cases in which trial commences on or after the filing of this opinion; and (3) cases tried before the filing of this opinion in which error has been properly preserved, and which (a) are pending on appeal to this court at the time of filing of this opinion, or (b) may be appealed after the filing of this opinion. * * * [citing authorities]." *Martin,* 217 N.W.2d at 542.

At another point in argument the State argues defendant's trial tactics in admitting the felony convictions thereby softening their impact on the jury preclude the finding of reversible error. A response to this argument is found in defendant's claim he admitted to his prior felony record "as a matter of trial tactics" after the trial court's denial of his motion in limine. In this connection he maintains the fact he admitted to said convictions in light of the judge's ruling before he took the stand certainly cannot constitute a waiver of his objection.

In *Martin* prior to trial defense counsel moved for an order in limine by which the State would be prohibited from making any in-presence-of-jury inquiry of Martin regarding his prior felony convictions, except those related to truth and veracity. This motion was overruled. During trial Martin testified on his own behalf and in response to an inquiry on direct examination stated he had previously been convicted of a felony. Ultimately on cross-examination Martin admitted he had been previously convicted of several felonies: Proper and timely objections were interposed as to such evidence at appropriate stages during the trial and again overruled.

In *Martin* the court expressly stated it was satisfied the assigned error was adequately preserved for consideration by this court.

In *Martin,* 217 N.W.2d at 541–542, this court held section 622.17, The Code, places the discretion as to admissibility of evidence of prior felony convictions in the judge rather than the cross-examiner and that " * * * for the purpose of attacking the credibility of any witness, including an accused under Code § 622.17, evidence that he has been previously convicted of a felony is admissible only if (1) the felony involved *dishonesty* or false statement, and (2) the judge determines any danger of unfair prejudice does not substantially outweigh the probative value of such prior felony conviction, taking into account such factors as (a) nature of the conviction, (b) its bearing on veracity, (c) its age, and (d) its propensity to improperly influence the minds of the jurors." (Emphasis supplied).

This statement in Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936, 940 (1967), is enlightening:

" * * * In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity." This statement is quoted in *Martin,* 217 N.W.2d at 540.

■ It necessarily follows defendant's four convictions involved dishonesty.

■ As stated, defendant also maintains that three of his four convictions were so remote as to be irrelevant on the question of his credibility as a witness. He cites this statement from *Gordon,* 383 F.2d at 940, as support for his position:

" * * * The nearness or remoteness of the prior conviction is also a factor of no small importance. Even one involving fraud or stealing, for example, *if it occurred long before and has been followed by a*

*legally blameless life,* should generally be excluded on the ground of remoteness." (Emphasis supplied).

The emphasized portion of the quoted statement hardly supports defendant's position, particularly in view of his 1971 conviction for shoplifting.

We have considered every contention urged by defendant in his brief and argument whether specifically referred to in this division or not and find his contention to be without merit.

The trial court did not abuse its discretion in permitting the introduction of this evidence.

We prefer to rest determination of defendant's assertion of error considered in this division upon the foregoing reasoning rather than on the State's contention defendant is precluded from asserting error in this court since his trial tactics constituted a waiver.

■ III. Defendant argues admission of testimony of Mary Grogan (National Tea's cashier) was erroneous as improper rebuttal. The record indicates the witness testified she checked out the cash registers the evening of September 13, 1973, after defendant had left the store and had been arrested. Defendant's objection to her testimony was overruled.

As stated, defendant's only witness was himself. While on the stand, he explained he had purchased the cigarettes, in and of itself implying he went through a cash register check-out lane. Furthermore, defendant asserted he found the receipt in his clothes after returning home from the police station. Due to this evidence by defendant, it would seem reasonable to allow the State to rebut it by placing a person on the stand who could explain the significance of a receipt dated the day after the robbery.

Defendant, however, argues the State introduced the cash register slip as well as other evidence bearing upon the store's cash register check-out system. Thus, the evidence is claimed to be cumulative rather than rebutting.

"Rebutting evidence is that which explains, repels, controverts, or disproves evidence produced by the other side. * * * [citing authority]." State v. Nelson, 261 Iowa 204, 209, 153 N.W.2d 711, 714. See also State v. Willey, 171 N.W.2d 301, 302 (Iowa 1969) and State v. Walker, 218 N.W.2d 915, 919 (Iowa 1974).

*Nelson,* 261 Iowa at 208, 153 N.W.2d at 714, says, " * * * the trial court has discretion to admit in rebuttal evidence which should have been offered in chief that is not strictly rebuttal. * * * [citing authority]." See also State v. Willey, 171 N.W.2d at 302.

While Mary Grogan could have testified in chief, it was proper in this respect to allow her testimony in rebuttal. Furthermore, as cashier, she was the only person who could specifically rebut defendant's testimony the September 14 slip was evidence of a purchase made September 13. This witness was the only person who checked out the cash registers. Any foundation testimony was to establish her credentials as the cashier.

The contention is without merit.

■ IV. Defendant assigns as error the testimony of Officer Nixon Sabin dealing with defendant's admission he had taken the goods. The basis of this contention is such testimony did not appear in the minutes of testimony.

This contention is untenable since "the State is not limited to the minutes of testimony in its examination of witnesses. In State v. Cunha, 193 N.W.2d 106, 111 (Iowa 1972), this court said: 'A witness whose name is endorsed on the indictment (or information), and minutes of whose testimony are filed, is not limited to those minutes in his actual testimony. * * * [citing authorities].' See also State v. Lynch, 197 N.W.2d 186, 190 (Iowa 1972)." State v. Lanphear, 220 N.W.2d 618, 621 (Iowa 1974). See also State v. Habhab, 209 N.W.2d 73,

75–76 (Iowa 1973); State v. Peterson, 219 N.W.2d 665, 673–674 (Iowa 1974); State v. Johnson, 219 N.W.2d 690, 696 (Iowa 1974); and State v. Bell, 223 N.W.2d at 183.

 V. Defendant's final assignment of error concerns the trial court's overruling of defendant's motions for a continuance and to reopen in order to obtain the presence of Nurse Ryan, mentioned earlier, to corroborate his allegation he was simply purchasing cigarettes for the Veterans Hospital in Iowa City.

It is admitted trial courts enjoy considerable discretion in dealing with such motions, but defendant argues this discretion was abused in view of the fact when one considers instruction 5 placed the burden on defendant to show a reasonable doubt, the court's refusal to allow defendant time to call Mrs. Ryan added to this already illegal burden. Furthermore, since the trial court allowed evidence of defendant's prior felony conviction record, it should also have allowed defendant to bolster his own credibility.

The State cites section 780.2, The Code, and rule 183, R.C.P., in support of its contention the trial court did not commit error.

No attempt was made by defendant to comply with rule 183, R.C.P. The motion was dictated into the record. A transcript of that record is before us.

State v. Cowman, 212 N.W.2d 420, 423 (Iowa 1973), has this statement:

"We have said granting or refusing a motion for continuance rests largely on the sound discretion of the trial court and such discretion is very broad. * * * [citing authorities]. Only where there is an abuse of judicial discretion will this court interfere with the action of the trial court in passing upon a motion for continuance. * * * [citing authority]."

We have considered defendant's argument and contentions urged in support of this assignment and we find no abuse of discretion. There is no merit in this contention.

The case is therefore

Affirmed.